UNITED STATES of America,
Plaintiff-Appellee,

v.

John CHAFIN, Defendant-Appellant.

No. 79–5193.

United States Court of Appeals,
Sixth Circuit.

Argued April 1, 1980.

Decided June 5, 1980.

George B. Fleshman, Ashland, Ky., for defendant-appellant.

Patrick H. Molloy, U. S. Atty., James F. Cook, James Zerhusen, Asst. U. S. Attys., Lexington, Ky., for plaintiff-appellee.

Before BROWN, KENNEDY and JONES, Circuit Judges.

BAILEY BROWN, Circuit Judge.

A federal indictment was filed against appellant, John Chafin, in the Eastern District of Kentucky, charging him with knowingly transporting firearms in interstate commerce with reasonable cause to believe that the state offense of "Wanton Endangerment in the First Degree," a felony under Kentucky law, was to be committed with them. Prior to and during the trial, Chafin moved to suppress rifles seized from his house on the ground that the affidavit used to obtain the warrant to search for the rifles was defective. The district court denied the motion. Chafin, who was found guilty by the jury, appealed. The only question raised by Chafin that requires discussion is the validity of the search and seizure that produced the rifles.

## Background

In January, 1978, a strike against the Lizann Mining Company was in progress at a coal tipple operated by the company at Hatfield, Kentucky. The tipple is located near the Tug Fork of the Big Sandy River, which forms the border between Kentucky and West Virginia. The town of Nolan is on the West Virginia side of the river, within sight of the coal tipple. Union members gathered nightly at a bonfire in the town, which became known as "the picket line." Chafin was present at the bonfire on the night of January 5–6, 1978.

At approximately 10:00 P.M. that evening, Chafin went to the guardhouse at the tipple. He informed the guards, Billy and Edgar Dillon, that he had heard that the guardhouse was going to be shot-up that night and suggested that the Dillons not stay in the building. At approximately 1:00 A.M. on January 6, the Dillons saw a vehicle approach the guardhouse, stop and turn off its lights. Bullets then began to hit the building, and two firearms were heard, one being louder than the other. The Dillons remained on the floor of the guardhouse while the bullets hit the building, but one of the men was able to reach a phone to call a

third Dillon brother who was a deputy sheriff. The deputy called the Kentucky State Police, and a trooper met him at the entrance gate to the mine property. As the two officers traveled down the mine road toward the guardhouse, they encountered a pickup truck near the tipple. The truck was occupied by Chafin as well as Carroll Runyon and James Diamond, who were later indicted with Chafin. The trooper observed a long gun case, which appeared to be filled, in the back of the cab. The three men were then allowed to leave. Federal ATF agents subsequently searched the area of the guardhouse and recovered shell casings from 30.06 and .22 calibre weapons.

On January 12, a Mingo County, West Virginia warrant was obtained by the Sheriff's Office there to search Chafin's dwelling at Nolan. The warrant was based upon an affidavit containing information given to a deputy sheriff, A. W. Childress, by Runyon. A search of Chafin's dwelling produced rifles that were admitted in evidence at the trial.

On January 11, state officials filed a criminal complaint against Chafin and the others, charging them with the state felony of Wanton Endangerment in the First Degree. This charge was later dismissed. A federal indictment was filed against Chafin and the others on November 13, 1978, charging them with violation of 18 U.S.C. § 924(b): knowingly transporting firearms in interstate commerce with reasonable cause to believe that the state offense of Wanton Endangerment in the First Degree, a felony under Kentucky law, was to be committed with them. A jury found Chafin and Diamond guilty.

## The Search Warrant

Chafin contends that the search warrant used to seize the rifles was defective and that the court erred in admitting the rifles in evidence. It appears that a pre-trial hearing was held, the motion to suppress was taken under advisement, and appointed counsel for Chafin was ordered to file a memorandum in support of the motion. This was not done, and the court did not rule on the motion to suppress prior to trial.

At trial, however, counsel objected to the admission of the rifles, which was overruled. The government does not contend that Chafin had waived his objection by his counsel's failure to file a memorandum in support of the motion. The government simply contends that the search warrant was adequately supported. Before discussing the contents of the affidavit and warrant, we will first point to some general principles that must govern our resolution of the validity of this warrant.

■ Without dispute, the warrant here was based solely on hearsay information obtained by the affiant, Childress, from Runyon. A warrant, however, may properly be based only on hearsay (*Jones v. United States*, 362 U.S. 257, 271, 80 S.Ct. 725, 736, 4 L.Ed.2d 697 (1960)) if the affidavit discloses to the magistrate the underlying facts that (a) caused the informant to conclude that the objects of the search are in the premises to be searched and (b) caused the affiant to believe that the informant is credible or his information is reliable. *Aguilar v. Texas*, 378 U.S. 108, 114, 84 S.Ct. 1509, 1513, 12 L.Ed.2d 723 (1964). On the other hand, as Mr. Justice Goldberg pointed out, a preference should be accorded searches under a warrant, and in a doubtful case a search under a warrant can be sustained as being supported by probable cause where without the warrant the search would be invalid for failure to show such cause. *United States v. Ventresca*, 380 U.S. 102, 106, 85 S.Ct. 741, 744, 13 L.Ed.2d 684 (1965), *citing Jones, supra*, 362 U.S. at 270, 80 S.Ct. at 735. The requirement of the Fourth Amendment in this area is "practical and not abstract" and affidavits are to be interpreted by magistrates in a "commonsense and realistic fashion." *Ventresca*, 380 U.S. at 108, 85 S.Ct. at 745. Further: "A grudging or negative attitude by reviewing courts towards warrants will tend to discourage police officers from submitting their evidence to a judicial officer before acting." *Id.*

With these principles in mind, we turn to the question whether the seizure of the rifles in this case was valid.

The affidavit and complaint states, *inter alia*, that: "on the 6 day of January, 1978, and prior to the making of this complaint, in the County of Pike, State of Kentucky, James "Hoss" Diamond and John Chafins [sic] did unlawfully (and feloniously) attempt to murder Billy Dillon and Edgar Dillon, security guards for Liz Ann Mining Company by shooting at said security guards with a .22 calibre rifle and a 30.06 rifle, then and there with intent to kill and murder the said Billy Dillon and Edgar Dillon, and that the affiant has cause to believe and does believe that property (Evidence of a crime) namely a .22 calibre rifle and a 30.06 rifle is concealed in a certain 2 story white block house belonging to John Chafins [sic] [and then describes precise location of house] and the facts for such belief are: one Carroll K. Runyon, who was with the said James "Hoss" Diamond and John Chafins [sic], before and after the commission of said crimes and believes that the rifles are now located in and at said dwelling house." The complaint and affidavit was signed by deputy Childress and sworn to before the magistrate on January 12, 1978.

The search warrant itself contains the foregoing information except that it states, as grounds for probable cause, the following, which, as will be seen, gives additional information: "one Carroll K. Runyon who was with the said James "Hoss" Diamond and John Chafins [sic], before and after the commission of said crimes, states that the said John Chafins [sic] procured said rifles from said dwelling house before the commission of said crimes and believes that the rifles are now located in said dwelling house."

Below the foregoing information on the warrant is the signature again of the affiant, Childress, and, following the authorization to search, is the signature of the magistrate.

■ Since the facts stated in the warrant are somewhat fuller than the facts stated in the complaint and affidavit, we must first determine whether we can consider the additional facts set out in the warrant. Clear-

ly we could not consider such additional facts set out in the warrant if Rule 41(c), Fed.R.Cr.P., was applicable since such information was not "taken down by a court reporter or recording equipment and made a part of the affidavit." However, as pointed out in *Tabasko v. Barton*, 472 F.2d 871, 873 (6th Cir. 1972), *cert. denied*, 412 U.S. 908, 93 S.Ct. 2288, 36 L.Ed.2d 974 (1973), this requirement is not one of constitutional dimension. The question whether this additional information can be considered on the probable cause issue turns on whether state law allows such, assuming of course, that the statement in the warrant can be considered to be a sworn statement. *Tabasko* at 874.

The West Virginia statute (W.Va.Code § 62–1A–3) is not altogether clear as to whether information not in the affidavit can be considered in support of the warrant. However, *United States v. Harrick*, 582 F.2d 329 (4th Cir. 1978), involved a federal prosecution in which a motion to suppress raised the question whether a sworn statement to a West Virginia magistrate, not in the affidavit but made at the time the warrant was issued, could be considered in support of the warrant. The Fourth Circuit held that such sworn statement not in the affidavit could be considered and held that the search was valid.

Since the affidavit shows that the affiant, Childress, was placed under oath by the magistrate and since the warrant, which also contains the affiant's signature under the "grounds for probable cause," would have been executed after the affidavit, it can fairly be inferred that the statement of the affiant made in the warrant was likewise made under oath.

With respect to the credibility of Runyon, who gave the information to the affiant, we note at the outset that this informant is named, whereas in the cases dealing with the question whether the affidavit shows that the informant was credible, the informant is almost always not named. Nevertheless, we apply the same standard here in testing this affidavit as we would if the informant was unnamed since no reason appears to view the matter otherwise.

In *United States v. Harris*, 403 U.S. 573, 583, 91 S.Ct. 2075, 2081, 29 L.Ed.2d 723 (1971), it was held that a declaration against penal interest is a reason to accept as truthful a statement of an informant. "People do not lightly admit a crime and place critical evidence in the hands of the police in the form of their admissions." *Harris* at 583, 91 S.Ct. at 2082. *See also United States v. Barone*, 584 F.2d 118, 122 (6th Cir. 1978), *cert. denied*, 439 U.S. 1115, 99 S.Ct. 1019, 59 L.Ed.2d 73 (1979), and *Armour v. Salisbury*, 492 F.2d 1032, 1035–36 (6th Cir. 1974). Here it cannot fairly be said that the informant, Runyon, admitted all of the ingredients of the crime of attempted murder. He did, however, admit to being with the principals before the attempted murder when they obtained the rifles from Chafin's house and was with them after the attempt. Certainly that was, to Runyon, a dangerous admission, one that he would not lightly make, and in doing so he was placing critical evidence in the hands of the prosecutors. We are, accordingly, of the opinion that the affidavit contains sufficient indicia of the truthfulness of Runyon's statement.

We also conclude that the affidavit and warrant disclosed sufficient circumstances to the magistrate that caused the informant to conclude that the rifles were in Chafin's house. The informant, Runyon, stated that he was with Chafin and Diamond before and after the attempted murder in which the rifles were used, that the rifles were procured from Chafin's house and that he believed they were in Chafin's house. Since Runyon was with Chafin both before and after the shooting, it was a reasonable inference that Runyon was in a position to know that the rifles were in Chafin's house.

Other contentions advanced by Chafin are completely without merit and do not warrant discussion.

The judgment of the district court is affirmed.

NATHANIEL R. JONES, Circuit Judge, dissenting.

Because I believe the information set forth in the affidavit and warrant was insufficient for a neutral and detached magistrate to find probable cause justifying a search of defendant's home for firearms, I respectfully dissent.

## I.

The principles stated in *Aguilar v. Texas*, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964), must guide this Court's determination of the constitutionality of the search warrant. *Aguilar* holds that the magistrate issuing a search warrant must be informed of the underlying circumstances leading police officers to believe that a search would be fruitful and that an informant was credible. *Id.* at 114, 84 S.Ct. at 1513. The majority's decision eviscerates the rule in *Aguilar* and as a consequence, reinterprets the probability standard of the Fourth Amendment into a standard of plausibility or possibility.[1]

*Aguilar requires* an affidavit to disclose circumstances or facts to support a belief that evidence of crime will *probably* be found in the place to be searched.

The information presented to the magistrate in this case simply states:

One Carroll Runyon [a subsequently indicted co-defendant] who was with said *James "Hoss" Diamond* and *John Chafin*, before and after the commission of said crimes, states that John Chafins [sic] procured said rifles from said dwelling house before the commission of said crimes, and believes that the rifles are now located in and at said dwelling house.

It is indisputable that the only circumstance or fact proffered to aid in the magistrate's determination of probable cause was that the rifles allegedly were obtained from Chafin's home six days prior to the shooting incident and the search of his home. The affidavit and warrant are void of *any* facts or circumstances to make probable a belief that the rifles were stored at Chafin's home

at the time the warrant was issued. Neither the affidavit nor the warrant provides *details* of the informant's activities with Chafin subsequent to the shooting incident or immediately prior to the search. See *United States v. Harris*, 403 U.S. 573, 575 and 579, 91 S.Ct. 2075, 2078, 2080, 29 L.Ed.2d 723 (1970); *Jones v. United States*, 362 U.S. 257, 267–268, 80 S.Ct. 725, 734–735, 4 L.Ed.2d 697 (1960); *United States v. Hatfield*, 599 F.2d 759, 760 (6th Cir. 1979); *United States v. Barone*, 584 F.2d 118, 119–120 (6th Cir. 1978).

The majority is quite correct to point out that *United States v. Ventresca*, 380 U.S. 102, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965), requires that:

Affidavits . . . be tested and interpreted by magistrates and courts, in common sense and realistic fashion . . . [and], the resolution of doubtful or marginal cases in this area should be largely determined by the preference to be accorded to warrants.

*Id.* at 108–109, 85 S.Ct. at 746.

*See also United States v. Hatfield*, 599 F.2d 759, 761 (6th Cir. 1979). However, this is not a "doubtful or marginal case" in which a magistrate's review has fulfilled the purpose of the Fourth Amendment. *United States v. Giacalore*, 541 F.2d 508, 513 (6th Cir. 1976).

Indeed, *Ventresca* reaffirms this Court's duty to *scrutinize* an affidavit for its adherence to the Fourth Amendment's requirements set forth in *Aguilar*:

This is not to say that probable cause can be made out by affidavits which are purely conclusory, stating only the affiant's or informer's belief that probable cause exists . . . Recital of some of the underlying circumstances in the affidavit is essential if the magistrate is to perform his detached function and not serve merely as a rubber stamp for the police.

308 U.S. at 108, 85 S.Ct. at 746.

I would apply these well settled principles to hold that the information presented to the magistrate was grossly inadequate and

---

1. The Fourth Amendment provides: "No warrant shall issue, but upon probable cause."

utterly lacking in factual specificity to support a finding of probable cause.

## II.

*Aguilar* also requires the disclosure to the magistrate of circumstances upon which the affiant concluded the informant was credible or his information reliable. 378 U.S. at 114, 84 S.Ct. at 1513. The majority relies upon *United States v. Harris*, 403 U.S. 573, 583, 91 S.Ct. 2075, 2081, 29 L.Ed.2d 723 (1971), for the proposition that a "declaration against penal interest is a reason to accept as truthful a statement of an informant." Assuming *arguendo* that the holding of Harris is as the majority states,[2] they concede the facts of this case do not fall within the holding of *Harris*. They state "here it cannot fairly be said that the informant, Runyon, admitted *all* the ingredients of the crime of attempted murder." (emphasis added). However, the informant did not admit to any of the ingredients of the crime of attempted murder or any other crime. Runyon merely states he was in the company of the principals of the crime before and after they allegedly committed the attempted murder.

An examination of the facts in prior decisions demonstrates the insignificance of the informant's "admission" in this case. In *Harris*, a search warrant was issued on the basis of an affidavit which stated, in part:

> This person has personal knowledge of and has purchased illicit whiskey from within the residence described, for a period of more than 2 years, and most recently within the past two weeks.

403 U.S. at 575, 91 S.Ct. at 2078. *Harris* quotes from the Supreme Court's decision in *Jones v. United States*, where the affiant revealed:

> The source of the information goes on to relate that on many occasions the source of information has gone to said apartment and purchased narcotic drugs from

> the above mentioned persons and the narcotics were secrated [sic] in the above mentioned places. *Id.* 362 U.S. at 267–268, n. 2, 80 S.Ct. 725.

*Id.* at 578, 91 S.Ct. at 2079.

Recent decisions in this Circuit parallel the above-cited Supreme Court decisions requiring an informant to admit to a crime as an indicia of his credibility. This informant in *Barone, supra*, admitted to having received $10,000 to travel to Columbia, South America to purchase cocaine, which he did. In *Armour v. Salisbury*, 492 F.2d 1082 (6th Cir. 1972), the informant admitted to having purchased narcotics at the home to be searched. The majority extends the holding of *Harris*, and the decisions of this Circuit in *Barone* and *Armour* to situations in which an informant reveals his suspicion that a crime might be committed.

## III.

The majority's decision adheres to the admonishment in *Ventresca* to interpret affidavits in a "common sense" manner. Apparently, the majority is motivated by a fear that "a grudging or negative attitude by reviewing courts towards warrants will tend to discourage police officers from submitting their evidence to a judicial officer before acting." 380 U.S. at 108, 85 S.Ct. at 746. However, police officers act at their peril by failing to submit to a judicial officer evidence to support a finding of probable cause to issue a search warrant. The decision in *Katz v. United States*, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967), stated the basic constitutional rule:

> Searches conducted outside the judicial process, without prior approval by a judge or magistrate, are per se unreasonable under the Fourth Amendment subject only to a few specified, established and well-developed exceptions.

*Id.* at 357, 88 S.Ct. at 514. Therefore, the majority should not be deterred from apply-

---

2. The precedential value of the holding in *United States v. Harris*, 403 U.S. 573, 583–85, 91 S.Ct. 2075, 2081–2083, 29 L.Ed.2d 723 (1970), that an admission of crime is itself a sufficient indicia of credibility is questionable. *Harris* was decided by a vote of 5–4. However, Justice Stewart did not concur in Section III of Chief Justice Burger's opinion for the majority, which discussed this issue.

ing *Aguilar* by a fear that police officers will conduct warrantless searches.

Accordingly, I would vacate the judgment of the district court and remand the case for a new trial.