UNITED STATES of America, Plaintiff,

v.

Edward NEMBHARD and James Wilson, Defendants.

Crim. No. 80–80318.

United States District Court, E. D. Michigan, S. D.

Dec. 4, 1980.

Ronald P. Weitzman, Asst. U.S. Atty., Detroit, Mich., for plaintiff.

Warren D. Bracy, Fletcher J. Campbell, Detroit, Mich., for defendants.

## MEMORANDUM OPINION

### ANNA DIGGS TAYLOR, District Judge.

The grand jury which returned the indictment upon which this prosecution was based heard testimony on one day (May 7, 1980) and heard from only one witness: Drug Enforcement Administration Special Agent William E. Modesitt. He detailed all observations made at Metropolitan Airport which led to these defendants' arrest and prosecution. Agent Modesitt named each of the agents who were detailed with him at the airport. He then described the de-barkation of the defendants from a New York flight, and stated that "as we were watching", each defendant appeared to place a telephone call while "trying to detect a surveillance." Assistant U. S. Attorney Weitzman then asked (Tx p. 6):

"Q. When you say we, that would be yourself. . . ."

The agent's response was the following interposition:

A. Myself and Detective Sgt. Paul Kleese (sic) had met this flight. Just after this we continued to watch the individuals and they both hung up the phone and proceeded to walk down the American Airlines concourse area on the upper level towards the south terminal.

Throughout the remainder of his testimony to the grand jury, Agent Modesitt spoke in terms of all observations having been made by "we" and "us", never dissociating himself from those who were making the observations. He presented a detailed description of the suspicious and furtive characteristics and actions which the defendants displayed, as they loitered through the airport. The climax of his testimony was that he ultimately opened the travel case taken from defendant Wilson and found therein two bags of a white powder which was subsequently determined to be heroin.

The grand jury transcript was first provided to defense counsel by Assistant U.S. Attorney Weitzman on November 13, 1980; the second day of trial and the day on which Agent Modesitt took the stand. The court requested a copy of the transcript from Mr. Weitzman, and received it, on November 17, 1980.

In the meanwhile, Agent Modesitt had testified at a June, 1980 hearing before the court, on defendants' motion to suppress the evidence seized at the airport. His testimony at that hearing was that he left Sergeant Cleaves at the American Airlines gate area at the time the defendants were walking towards the telephones, and did not observe them again until he later rejoined the agents who were following defendants at the Innkeeper Restaurant. From that

point forward, his testimony is similar to that which was given to the grand jury. At the suppression hearing Modesitt testified that he had left Sergeant Cleaves at the gate in order to follow a young white woman, the fourth passenger to debark, who appeared nervous, changed her direction twice, and had no luggage. He followed her to the baggage claim area, where she claimed one bag and he abandoned her surveillance. He could not recall how he happened to go, from there, to the Innkeeper Restaurant where he rejoined the surveillance of these defendants.

Modesitt's testimony about leaving the defendants to follow a more suspicious white woman was offered after the defendants' insistence that the agent's decision to follow these defendants was based upon race. Modesitt denied any racial implication, and volunteered that he had left them, indeed, to follow a white woman. At trial, however, he testified that the woman had later claimed not one but four bags, and gave differing stories as to how he came to rejoin the agents in pursuit of these defendants. Sergeant Cleaves testified at trial that he followed the defendants because they were two men "of the same race," and apparently traveling first class.

The court refused to suppress the airport evidence at the suppression hearing largely on the basis of the credibility of Modesitt's testimony, as my statements on the record at the conclusion of that hearing will indicate. The motion to suppress has been reconsidered and granted, post-verdict, for the reasons more fully stated in another opinion.

At trial, Modesitt's testimony was that he left the American Airlines arrival gate area after the two defendants had debarked, and as they walked towards the bank of phones. He left Cleaves in that area, and himself did not continue to watch the defendants as they used the telephones, and through their peregrinations to the Innkeeper Restaurant. He testified that he made none of the observations which he told the grand jury, at transcript pages 4 through 10, were made by a "we" and "us" consisting of "myself and Cleaves."

At the conclusion of Modesitt's trial testimony, defendants made and filed their motions to dismiss the indictment for the giving of perjured testimony to the grand jury. Arguments were heard from all parties. The court took the motions under advisement; the jury has now returned verdicts of guilty; and the motions have been renewed. The court finds that it must grant the motions, set aside the verdicts, and dismiss the indictment.

In *United States v. Estepa*, 471 F.2d 1132, 1137 (2nd Cir., 1972), the Second Circuit reversed a defendant's conviction with instructions to the district court to dismiss the indictment. It held that the grand jury must not be misled into thinking that it is getting eyewitness testimony from an agent, when it is actually getting an account whose hearsay nature is concealed. That circuit's rule was stated as being that prosecutors are given wide latitude in the use of hearsay before a grand jury, with two alternative provisos:

1. Do not deceive the grand jurors as to the "shoddy merchandise they are getting."

or

2. The case must not present a high probability that, with eyewitness testimony, the grand jury would not have indicted.

The *Estepa* opinion refers us to an earlier line of previously minority Second Circuit thought in this area. In the case of *United States v. Beltram*, 388 F.2d 449 (2nd Cir., 1968), Judge Medina's dissent pointed out that the failure to call an eyewitness to the grand jury may have caused a conviction which would otherwise have been an acquittal, because the eyewitness' credibility at trial could have been impaired under cross examination by its conflict with his prior grand jury testimony. Similarly, Judge Friendly noted in *United States v. Borelli*, 336 F.2d 376 (2nd Cir., 1964), that the government ought not be allowed, by having its principal witness speak through the voice of another, to deprive a defendant of his right to impeach by contradictions.

Again, in *United States v. Payton*, 363 F.2d 996 (2nd Cir., 1966), the Second Circuit had refused to dismiss an indictment because the agent's conduct at the grand jury was "not shown to be deceitful." But Judge Friendly's dissent had stated that:

The course followed by the Government in this case makes a mockery of the Fifth Amendment's guarantee that 'No person shall be held to answer for capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury.' · What compromises this indictment is not that the grand jury heard only hearsay testimony as in *Costello v. United States* [350 U.S. 359, 76 S.Ct. 406, 100 L.Ed. 397], but that, in sharp contrast to that case, it had no way of knowing that the testimony which was all it was hearing was hearsay. Despite the lame apology offered at trial by Agent Ward, his statements to the grand jury . . . were the words of a man who had seen or heard whereof he spoke and were plainly meant to be taken as such; . . . . It is plain that had any such deception occurred at trial, whether through or without design, it would not be countenanced. . . ." 363 F.2d 1000 (Citations omitted).

In the Sixth Circuit, this set of circumstances has not yet been presented. However, in *United States v. Barone*, 584 F.2d 118 (6th Cir., 1978), the appellant sought reversal of his conviction for the district court's refusal to suppress, despite the false statement of an agent in his affidavit requesting a search warrant. The agent had falsely stated that the informant had provided "me" with information which had been reliable in the past. The informant, in actuality, had never before provided the agent with any information whatsoever. Barone also sought to have his indictment dismissed because of the prosecutor's failure to advise the grand jury, which heard only one agent witness, that a prior grand jury had heard many witnesses and refused to indict. Appellant Barone did not claim that the agent led the grand jury into the mistaken belief that his testimony was entirely firsthand; but claimed that it was improper to obtain an indictment through one witness' hearsay testimony that could not be obtained with the direct testimony of ten witnesses.

Our Sixth Circuit court said in that case that:

. . . we are not disposed to follow the rule of the Second Circuit in *Estepa*, [and] we observe that the standards set forth by Judge Friendly in that case were not violated here in any event. 584 F.2d at 125.

The *Barone* case is, therefore, clearly distinguishable from the one here presented. In that case there was not the slightest indication or contention that the one agent witness misled the grand jury during his testimony. The court's most significant language, for this court's instruction, today, is:

. . . *while we do not foreclose the possibility of an abuse of the grand jury system so egregious* as to warrant intervention by the use of our supervisory powers, such a circumstance clearly does not exist here, and we are not inclined to adopt the position of the Second Circuit in *Estepa*. 584 F.2d at 125.

Judge Keith's dissent in *Barone* recalls the test which the Sixth Circuit had set down in *United States v. Luna*, 525 F.2d 4 (1975), cert. den. 424 U.S. 965, 96 S.Ct. 1459, 47 L.Ed.2d 732 (1976). That test sought to deter police misconduct and safeguard the judicial process. The *Luna* decision was that the knowing use of a false statement by an affiant with the intent to deceive the court authorizes the invalidation of an affidavit which is sufficient probable cause, on its face. This is true even if the statement can be said to be immaterial to probable cause. The court held that, "In our judgment such perjury must lead to suppression of the evidence in order to prevent fraud upon the judicial process." 525 F.2d at 8. Accordingly, Judge Keith wrote in *Barone*, the agent's false affidavit "perpetrates a fraud upon and makes a mockery of the judicial process." 584 F.2d at 127. Therefore, he wrote, the affidavit should be impeached, the motion to suppress should

have been granted, and the conviction should be reversed.

Since the Sixth Circuit's *Barone* decision, the Ninth Circuit has had occasion to consider a case more similar to this. In *United States v. Samango*, 607 F.2d 877 (9th Cir., 1979), that circuit affirmed the district court's dismissal of an indictment where the grand jury had been given a transcript of testimony before a prior grand jury which "served no other reason than calculated prejudice", 607 F.2d at 883, and where the DEA agent testified to aspects of the case with which he had not been involved, where the hearsay nature of his testimony would not necessarily be apparent to the grand jurors, who might have been misled into thinking that he was describing his own observations. The court wrote that:

> The facts of each case determine when Government conduct has placed in jeopardy the integrity of the criminal justice system. Although no perjury has been alleged in the present case, we believe the prosecutor's behavior has exceeded the limits of acceptability. 607 F.2d at 884.

> If the grand jury is to accomplish either of its functions, independent determination of probable cause that a crime has been committed *and* protection of citizens against unfounded prosecutions, limits must be set on the manipulation of grand juries by over-zealous prosecutors. 607 F.2d 882.

> The prosecutor has a duty of good faith to the Court, the grand jury, and the defendant. *United States v. Basurto*, 497 F.2d 781, 786 (9th Cir., 1974). In *Basurto*, this court held that defendants' right to due process was violated where they had to stand trial on an indictment which the government knew was based partially upon perjured testimony. Furthermore, trial on such an indictment failed to comport with "fastidious regard for the honor of the administration of justice." *Id.* at 787, quoting *Communist Party v. Subversive Activities Control Board*, 351 U.S. 115, 76 S.Ct. 663, 100 L.Ed. 1003 (1956). 607 F.2d 884.

Judge Hufstedler had concurred with the majority result in *Basurto*, but had objected to the constitutional basis for the decision. She relied, instead, upon the court's power and duty to supervise the administration of justice, which power and duty extend to grand jury proceedings.

This court finds, today, that the case of *United States v. Nembhard and Wilson*, D.C., 512 F.Supp. 15 is far closer in facts to *Estepa*, to *Luna* and to *Samango*, that it is to *Barone*. Indeed, this case presents what the Sixth Circuit found was specifically absent, in *Barone*, "... an abuse of the grand jury system so egregious as to warrant intervention by the use of the court's supervisory powers." This is a case in which the grand jurors were deceived as to the shoddy merchandise they were getting; and therefore it meets one of the two alternative criteria set by *Estepa* for dismissal of the indictment. The government's principal witness for much of defendants' airport activity, Officer Cleaves, was permitted to speak to the grand jury through the voice of Agent Modesitt and, as Judge Friendly wrote in *Borelli*, and Judge Medina wrote in *Beltram*, the defendants were to that extent deprived of the opportunity to impeach Cleaves by contradictions, at trial. More basically, the government's course of action, as Judge Friendly wrote in *Payton*, and Judge Keith wrote in *Barone*, has "made a mockery of the judicial process." As Judge Keith wrote and the Sixth Circuit has held in *Luna*, the knowing use of a false statement perpetrates a fraud, and requires reversal of a conviction, *even* where the false statement is *immaterial*. In this situation, however, the court finds that the wealth of detail presented in Agent Modesitt's testimony to the grand jury indubitably had the same effect upon the grand jury that his detailed observations later had upon the court, at the suppression hearing. He was a most convincing and credible witness; a man who obviously had made thorough, cautious, unprejudiced observations; and, moreover, was a man who gave the impression of having an excellent memory. As it turns out, the finder of fact on both occasions was misled.

**24**

As Judge Hufstedler wrote in her concurring opinion in *United States v. Basurto*, 497 F.2d 781 (9th Cir., 1974):

> An important function of our supervisory power is to guarantee that federal prosecutors act with due regard for the integrity of the administration of justice. 497 F.2d at 793.

The power of the court to dismiss an indictment for prosecutorial misconduct, on the basis of its supervisory powers was reaffirmed in *United States v. Owens*, 580 F.2d 365 (9th Cir., 1978).

> Under its inherent supervisory powers, a federal court is empowered to dismiss an indictment on the basis of governmental misconduct.... As such, dismissal is used as a prophylactic tool for discouraging future deliberate governmental impropriety of a similar nature. 580 F.2d at 367.

This court, accordingly, dismisses this indictment.