**UNITED STATES of America,
Plaintiff-Appellant,**

v.

**Gilbert LUNA et al.,
Defendants-Appellees.**

**No. 75–1084.**

United States Court of Appeals,
Sixth Circuit.

Argued June 3, 1975.

Decided Nov. 7, 1975.

Certiorari Denied March 22, 1976.
See 96 S.Ct. 1459.

Ralph B. Guy, Jr., U. S. Atty., John L. Newcomer, Detroit Strike Force, Detroit, Mich., Marc Philip Richman, Washington, D. C., for plaintiff-appellant.

Norton N. Wisok, Hugh M. Davis, Jr., Detroit, Mich., for defendants-appellees.

N. C. Deday LaRene, Detroit, Mich., for Luna.

Sienna LaRene, Detroit, Mich., for Kopp.

Before PHILLIPS, Chief Judge, and WEICK and EDWARDS, Circuit Judges.

EDWARDS, Circuit Judge.

This is a government appeal from the suppression of wire tap evidence which the United States desired to offer in its prosecution of Gilbert Luna and three other defendants. The four had been indicted on four counts charging conspiracy to extort money from one William Stewart. The government contends that evidence of this extortion scheme was discovered as a result of a duly authorized and legal interception of communications through Gilbert Luna's telephone under an order dated March 2, 1973, issued by a District Judge in the Eastern District of Michigan, Southern Division. After originally denying defense motions to suppress the evidence derived from the telephone intercept order, the District Judge subsequently took testimony on a supplemental motion to suppress and thereafter granted that motion in a bench opinion.

In his suppression opinion, the District Judge identified as false, portions of a particular paragraph of the affidavit which pertained to information concerning thefts at the Detroit Metropolitan Airport and the subsequent fencing of the materials stolen there.

The paragraph principally in dispute reads as follows:

FBI-1 told me that Hines told him that Joseph "Joe" Tocco and Gilbert Luna provide the means of payment to the men actually performing the thefts and receive money from the sales of the freight and merchandise

stolen, as well as some of the stolen freight and merchandise.

This paragraph was one sentence of a 15-page affidavit filed by an FBI agent which dealt at length with allegations concerning a major theft ring operated at the Detroit Metropolitan Airport and with the fencing of the stolen goods procured. Even more detailed information (particularly in relation to Luna) alleged that the thieves were paid in narcotics by the persons who received and fenced the stolen goods. In these memoranda Luna was said to be supplying narcotics to Hines.

At the hearing on the motion to suppress, defendants produced a person named Filkovich whom they claimed was FBI-1. Subsequently this was conceded to be true by the agents involved. Filkovich testified that he had informed about the theft ring and had said that Hines was financing it, but had not said that Luna was. After hearing Filkovich and the two FBI agents involved who also testified on this score, and after inspecting the agents' field notes, the District Judge concluded, "There was no evidence elicited at the hearing to challenge Filkovich's unequivocal denial that such a statement had been made," and "We are compelled to conclude that the statement at page 8 was false."

The District Judge did not pass on the credibility of Filkovich or the FBI agents. He found the statements in the quoted paragraph were false and "material," and held that any material false statement in the affidavit required suppression of the evidence seized under the intercept order. He declined to find that "the falsity was an intentional effort to deceive the court," but concluded that "the misrepresentation was knowing and not inadvertent."

After a motion for rehearing supported by government filed affidavits was denied, the government appealed, claiming that the case should be remanded for further testimony and for a square resolution of the credibility of the witnesses.

■ We agree with the desirability of remand for resolution of credibility, since we find a decided conflict between the testimony of Filkovich and that of the FBI agents.[1] But we also feel that before remand this Circuit should define the legal standards to be applied.

This case presents squarely the problem of whether or not an attack upon a search warrant affidavit can be made, alleging not that it was facially insufficient to supply probable cause, but that when made it was actually false or fraudulent, or both. This issue was noted by the United States Supreme Court, but not decided, in *Rugendorf v. United States*, 376 U.S. 528, 531–33, 84 S.Ct. 825, 11 L.Ed.2d 887 (1964), and was referred to similarly by this court in *United States v. Bowling*, 351 F.2d 236, 241–42 (6th Cir. 1965), *cert. denied*, 383 U.S. 908, 86 S.Ct. 888, 15 L.Ed.2d 663 (1966).

It appears that since 1965 other circuit opinions have divided somewhat as to under what circumstances false representations in an affidavit should lead to suppression of evidence seized under a search warrant. *See United States v. Belculfine*, 508 F.2d 58 (1st Cir. 1974); *United States v. Marihart*, 492 F.2d 897 (8th Cir.), *cert. denied*, 419 U.S. 827, 95 S.Ct. 46, 42 L.Ed.2d 51 (1974); *United States v. Thomas*, 489 F.2d 664 (5th Cir. 1973); *United States v. Carmichael*, 489 F.2d 983 (7th Cir. 1973).

In the *Carmichael* case cited above, the Seventh Circuit held:

We now hold that a defendant is entitled to a hearing which delves below the surface of a facially sufficient affidavit if he has made an initial showing of either of the following: (1) any misrepresentation by the government agent of a material fact, or (2) an intentional misrepresentation by

---

is hereby referred to the District Court for consideration on the remand hereinafter provided for.

the government agent, whether or not material. See generally *United States v. Dunnings*, 425 F.2d 836, 840 (2d Cir. 1969), certiorari denied, 397 U.S. 1002, 90 S.Ct. 1149, 25 L.Ed.2d 412; *United States v. Halsey*, 257 F.Supp. 1002 (S.D.N.Y.1966); Kipperman, "Inaccurate Search Warrant Affidavits as a Ground for Suppressing Evidence," 84 Harv.L.Rev. 825 (1971).

However, once such a hearing is granted, more must be shown to suppress the evidence. Evidence should not be suppressed unless the trial court finds that the government agent was either recklessly or intentionally untruthful. A completely innocent misrepresentation is not sufficient for two reasons. Most importantly, the primary justification for the exclusionary rule is to deter police misconduct (see Kipperman, *supra*, at 831, and cases cited), and good faith errors cannot be deterred. Furthermore, such errors do not negate probable cause. If an agent reasonably believes facts which on their face indicate that a crime has probably been committed, then even if mistaken he has probable cause to believe that a crime has been committed. Such errors are likelier and more tolerable during the early stages of the criminal process, for issuance of a warrant is not equivalent to conviction.

Negligent misrepresentations are theoretically deterrable, but no workable test suggests itself for determining whether an officer was negligent or completely innocent in not checking his facts further. We therefore conclude that evidence should not be suppressed unless the officer was at least reckless in his misrepresentation. Even where the officer is reckless, if the misrepresentation is immaterial, it did not affect the issuance of the warrant and there is no justification for suppressing the evidence. Arguably, the same conclusion could be reached as to deliberate but immaterial misrepresentations. However, we conclude that if deliberate government perjury

should ever be shown, the court need not inquire as to the materiality of the perjury. The fullest deterrent sanctions of the exclusionary rule should be applied to such serious and deliberate government wrongdoing.

*United States v. Carmichael, supra* at 988–89. (Footnote omitted.)

This view is squarely adopted by the Eighth Circuit in the *Marihart* case cited above, *supra* at 900. *See also United States v. Belculfine, supra.*

The Fifth Circuit has phrased this matter somewhat differently:

Therefore, we hold that affidavits containing misrepresentations are invalid if the error (1) was committed with an intent to deceive the magistrate, whether or not the error is material to the showing of probable cause; or (2) made non-intentionally, but the erroneous statement is material to the establishment of probable cause for the search.

*United States v. Thomas, supra* at 669.

In this circuit's *Bowling* case (cited above) dealing with unintentional error, we said:

While we have noted that the intent to deceive the magistrate charge was never presented to the District Judge, he did have clearly before him the factual errors in the affidavit upon which appellant now relies. Under this circumstance, we read the denial of the motion to suppress evidence as a holding that there was probable cause for the warrant and that errors in the affidavit were either immaterial or unintentional, such as are produced by drafting "by non-lawyers in the midst and haste of a criminal investigation." *United States v. Ventresca, supra*, 380 U.S. [102] at 108, 85 S.Ct. [741] at 746 [13 L.Ed.2d 684].

*United States v. Bowling, supra* at 241–42. (Footnote omitted.)

In *Bowling* we also noted:

The Supreme Court has also made clear that highly technical attacks upon affidavits and warrants where

sought and used are not to be encouraged.

"These decisions reflect the recognition that the Fourth Amendment's commands, like all constitutional requirements, are practical and not abstract. If the teachings of the Court's cases are to be followed and the constitutional policy served, affidavits for search warrants, such as the one involved here, must be tested and interpreted by magistrates and courts in a commonsense and realistic fashion. They are normally drafted by nonlawyers in the midst and haste of a criminal investigation. Technical requirements of elaborate specificity once exacted under common law pleadings have no proper place in this area. A grudging or negative attitude by reviewing courts toward warrants will tend to discourage police officers from submitting their evidence to a judicial officer before acting." *United States v. Ventresca, supra,* 380 U.S. at 108, 85 S.Ct. at 746.

*Id.* at 237.

The purpose of the Fourth Amendment is, wherever practical, to involve a judicial officer (not directly charged with the duty to investigate or prosecute) in the decision to search any constitutionally protected area. Congress, in turn, has recognized the special sensitivity of telephonic searches and has even more narrowly limited the instances where a search can lawfully be made without judicial warrant. The Omnibus Crime Control & Safe Streets Act of 1968, 18 U.S.C. §§ 2510–2520 (1970).

The exclusionary rule laid down in *Mapp v. Ohio,* 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961), serves these constitutional purposes by seeking to deter police misconduct and to safeguard the integrity of the judicial process. But it by no means contradicts the practical interpretation of the Fourth Amendment mandated by *United States v. Ventresca,* 380 U.S. 102, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965).

In our present case the basic constitutional purpose was complied with in the sense that there was extensive law enforcement investigation, and a 15-page affidavit representing probable cause was presented before a magistrate with the request for the search warrant. The warrant was issued before the interception.

Nonetheless, it must be recognized that law enforcement agents presenting evidence to magistrates could make a mockery of the magistrate's role if, in the necessarily ex parte proceeding, they could freely employ false allegations in order to secure the warrant. The same could likewise be true if the agents could, with impunity, draft affidavits with utter recklessness as to truth or falsity. In either instance there would be a lack of good faith in the performance of the agent's duty to the judicial officer.

There are two circumstances which we believe authorize the impeachment of an affidavit which on its face is sufficient probable cause for issuance of the warrant. The first of these consists of knowing use of a false statement by the affiant with intent to deceive the court. This is true even if the statement can be said to be immaterial to the issue of probable cause. In our judgment such perjury must lead to suppression of the evidence in order to prevent fraud upon the judicial process.

The second circumstance arises when a law enforcement agent recklessly asserts a statement essential to establishment of probable cause and the charge is subsequently made that the statement is both false and recklessly made. In alleging recklessness, the movant must offer affidavits 1) that the statement sought to be attacked was false when made, and 2) that when made the affiant did not have reasonable grounds for believing it. At a hearing on such a charge, it will be important for the District Judge to determine whether means had been available to the agent to establish the truth or falsity of the statement without such de-

lay as would defeat a legitimate law enforcement purpose.

 On the other hand, we do not believe that good faith error in a carefully prepared search warrant affidavit should be held to require suppression of evidence even where the erroneous allegation was essential to establishment of probable cause. As we see the matter, the suppression rule can hardly be expected to prevent human error. It should be employed to strike down perjury and to promote careful police work.

Although what we have said to this point is sufficient for purposes of the remand previously ordered, two comments on the District Judge's present rulings may prove helpful.

 First, the allegation attacked as false said in part "Joseph (Joe) Tocco and Gilbert Luna provide the means of payment to the men actually performing the thefts." In his two opinions the District Judge referred to this as affiant's assertion that "Luna was financing the thefts." This appears to be an error. In testing the actual words of the affidavit for either perjury or recklessly tendered mistake, we think that in the context of the total affidavit they must be judged on the basis of an assertion that FBI-1 had informed that Tocco and Luna were supplying the means with which the thieves were paid.

 Second, it appears that the District Judge's view of the affidavit may have been affected by the fact that only one affidavit was prepared, that it was signed by FBI agent Schley, the agent in charge of the case, and that it incorporated what the informant told agent Masters, as well as what he told Schley, without informing the magistrate as to this last fact. The present record shows that FBI-1's information relating to this topic was furnished only to Agent Masters. But unless the hearing on remand develops some indication that this misstatement was made in bad faith with the intention to mislead the magistrate, we do not believe it can be a basis for suppression. On somewhat different facts, *Ventresca* recognized that "observations of fellow officers of the Government engaged in a common investigation are plainly a reliable basis for a warrant applied for by one of their number." *United States v. Ventresca*, 380 U.S. 102, 111, 85 S.Ct. 741, 747, 13 L.Ed.2d 684 (1965).

The order of suppression appealed from is vacated and the case is remanded for further proceedings consistent with this opinion.