**UNITED STATES of America, Plaintiff-Appellant,**

v.

**Isaac M. JENKINS and Isaac F. Jenkins, Defendants-Appellees.**

No. 81–3592.

United States Court of Appeals, Sixth Circuit.

Argued Aug. 6, 1982.

Decided March 5, 1984.

Nancy C. Schuster, Chief, Crim. Div. argued, Cleveland, Ohio, Thomas M. Bauer, Asst. U.S. Atty., Akron, Ohio, for plaintiff-appellant.

E. Winther McCroom argued, Breckenridge, Haynes & McCroom, Youngstown, Ohio, for Isaac M. Jenkins.

Donald S. Varian, Jr., Akron, Ohio, for Isaac F. Jenkins.

Before EDWARDS and JONES, Circuit Judges, and PECK, Senior Circuit Judge.

GEORGE CLIFTON EDWARDS, Jr., Circuit Judge.

This is an appeal by the United States from an order of the District Court, which suppressed evidence on the ground that a search warrant under which said evidence had been seized from the home and car of appellee Isaac M. Jenkins was invalid. The reason for suppression was that the FBI agent who had signed the search warrant had not had personal knowledge of the facts on the basis of which a Magistrate issued the search warrant. After the District Judge granted the motion to suppress, counsel for the United States moved to reopen the suppression hearing in order to present further evidence designed to indicate, the government asserted, that there was no intention on the part of the agent who signed the search warrant to mislead the Magistrate as to the source of the information, and that in fact the Magistrate was not misled and knew the source of the information. It is the government's contention that on such a rehearing they would be able to show that, although the agent who

signed and swore to the affidavit had no personal knowledge of the facts, he derived them from other FBI agents who had personal knowledge, and that the Magistrate knew that as to the agent signing the affidavit, the affidavit was of a hearsay nature. (See Appendix A.)

This case arises out of alleged "shylocking" operations in Youngstown where operators of usurious lending schemes collected interest from "reluctant" clients by beating them with rubber mallets if they failed to make the payments sought to be exacted. These practices are not before us on the merits of this appeal. All that is before us is the question as to whether or not the record should be enhanced by full elucidation before the District Court of the factual background of the affidavit or affidavits which were presented to the Magistrate. We believe the ultimately controlling law in relation to this case is established by *Franks v. Delaware,* 438 U.S. 154, 155–56, 98 S.Ct. 2674, 2676–77, 57 L.Ed.2d 667 (1978):

> This case presents an important and longstanding issue of Fourth Amendment law. Does a defendant in a criminal proceeding ever have the right, under the Fourth and Fourteenth Amendments, subsequent to the *ex parte* issuance of a search warrant, to challenge the truthfulness of factual statements made in an affidavit supporting the warrant?
>
> In the present case the Supreme Court of Delaware held, as a matter of first impression for it, that a defendant under *no* circumstances may so challenge the veracity of a sworn statement used by police to procure a search warrant. We reverse, and we hold that, where the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request. *In the event that at that hearing the allegation of perjury or reckless disregard is established by the defendant by a pre-ponderance of the evidence, and, with the affidavit's false material set to one side, the affidavit's remaining content is insufficient to establish probable cause, the search warrant must be voided and the fruits of the search excluded to the same extent as if probable cause was lacking on the face of the affidavit.*
> (Emphasis added.)

While we recognize that the Supreme Court has recently revisited the whole area of search warrant procedures in *Illinois v. Gates,* —— U.S. ——, 103 S.Ct. 2317, 76 L.Ed.2d 527, decided June 8, 1983, we find nothing therein which tends to negate the *Franks v. Delaware* standard that an affidavit, like the one before us, may be challenged successfully only on proof that it contains "deliberate falsehood or reckless disregard for the truth" without which the affidavit would be an insufficient basis for the warrant.

The record at this point does not reveal exactly how the facts contained in the warrant were derived, nor does it reveal the degree to which its hearsay aspects were known to the Magistrate before the warrant was issued.

It will be time enough for this court to make its ultimate determination on these issues when they have been fully explored at the District Court level and an adequate record written thereon. For the purposes of the hearing on this issue, we call the attention of the District Judge to *United States v. Ventresca,* 380 U.S. 102, 108, 85 S.Ct. 741, 746, 13 L.Ed.2d 684 (1965), wherein the Supreme Court said:

> These decisions reflect the recognition that the Fourth Amendment's commands, like all constitutional requirements, are practical and not abstract. If the teachings of the Court's cases are to be followed and the constitutional policy served, affidavits for search warrants, such as the one involved here, must be tested and interpreted by magistrates and courts in a commonsense and realistic fashion. They are normally drafted by nonlawyers in the midst and haste of a

criminal investigation. Technical requirements of elaborate specificity once exacted under common law pleadings have no proper place in this area. A grudging or negative attitude by reviewing courts toward warrants will tend to discourage police officers from submitting their evidence to a judicial officer before acting.

*See also Illinois v. Gates, supra,* wherein the Supreme Court majority reestablished a "totality of circumstances" standard [1]; *Brinegar v. United States,* 338 U.S. 160, 176, 69 S.Ct. 1302, 1311, 93 L.Ed. 1879 (1949); *United States v. Bowling,* 351 F.2d 236 (6th Cir.1965), *cert. denied,* 383 U.S. 908, 86 S.Ct. 888, 15 L.Ed.2d 663 (1966).

Applicable also to this hearing, of course, is Rule 41 of the Federal Rules of Criminal Procedure.

■ Under what we deem to be settled Supreme Court standards and the facts of this case, we believe that the denial of the government's motion to reopen the suppression hearing in order to take further testimony was error which requires reversal. It will be time to consider an ultimate decision on the suppression motion when all the facts are on the record.

For the reasons outlined above, we vacate the suppression order previously entered by the District Court and remand to the District Court for further consideration in accordance with this opinion.

## APPENDIX A

MISS SCHUSTER: Your Honor, some evidence that was not elicited from Special Agent Owen has come to our attention, and I would proffer what that is to the Court and then ask the Court's permission to reopen the hearing for putting Agent Owen on the stand so that he can testify to the information. And that is on the day before the warrant was signed, which I believe would have been April 22nd, Mr. Owen personally took the affidavit as it is submitted to the Court, but without the last paragraph, to the magistrate; that he and the magistrate personally discussed the affidavit, and that the magistrate was concerned to have more corroboration in the affidavit in regard to the statements of Merry Wright and Major Talley.

It was after that that certain conversations which were tape recorded were had. The paragraphs in regard to those conversations were then added to the warrant and the warrant returned to Magistrate Laurie in Akron by Mr. Hamilton while Mr. Owen supervised the situation out at the house. Tr. of Suppression Hearing at 126–27.

JOHN W. PECK, Senior Circuit Judge, concurring.

I concur with Judge Edwards that the suppression order be vacated and this cause be remanded to the district court for reopening the suppression hearing to take further testimony. In reaching that conclusion, however, I follow a line of reasoning diverging from that followed by Judge Edwards.

1. The court there stated:
   For all these reasons, we conclude that it is wiser to abandon the "two-pronged test" established by our decisions in *Aguilar* and *Spinelli.* In its place we reaffirm the totality of the circumstances analysis that traditionally has informed probable cause determinations. See *Jones v. United States* [362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697], supra; *United States v. Ventresca,* supra; *Brinegar v. United States,* supra. The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of a reviewing court is simply to ensure that the magistrate had a "substantial basis for ... conclud[ing]" that probable cause existed. *Jones v. United States,* supra, 362 US, at 271, 4 L Ed 2d 697, 80 S.Ct. 725 [736], 78 ALR2d 233. We are convinced that this flexible, easily applied standard will better achieve the accommodation of public and private interests that the Fourth Amendment requires than does the approach that has developed from *Aguilar* and *Spinelli.* *Illinois v. Gates,* —— U.S. ——, ——, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527, 548 (1983) (footnote omitted).

The warrants at issue in this case are federal in nature and must comply with the provisions of Fed.R.Crim.P. 41 as well as with constitutional requirements. *United States v. Massey,* 687 F.2d 1348, 1355 (10th Cir.1982). *See United States v. Shorter,* 600 F.2d 585 (6th Cir.1979). The defendants argue that there is no justification for reopening the suppression hearing because under Rule 41(c)(1),[1] the magistrate was permitted to consider only those matters contained in the affidavit in determining whether there was probable cause for issuance of the warrants. The issue, accordingly, is whether in light of Rule 41(c)(1), there existed a compelling reason for reopening the suppression hearing to take testimony concerning the extent of the magistrate's knowledge of the identity of the preparer of the affidavit. I believe there was a compelling reason to reopen the hearing.

The rule is firmly established that a warrant must stand or fall solely on the contents of an affidavit if that is the only matter presented to the issuing magistrate. *United States v. Hatcher,* 473 F.2d 321, 323–24 (6th Cir.1973); *United States v. Sherwin,* 572 F.2d 196, 198 (9th Cir.1977), *cert. denied,* 437 U.S. 909, 98 S.Ct. 3101, 57 L.Ed.2d 1140 (1978). This rule, however, does not limit a district court's consideration of evidence during a suppression hearing to the four corners of the affidavit. In *Franks v. Delaware,* 438 U.S. 154, 98 S.Ct.

2674, 57 L.Ed.2d 667 (1978), the Supreme Court held that upon a substantial preliminary showing by a defendant that a false statement, necessary to a finding of probable cause, was included by the affiant in a written affidavit in support of an application for a warrant, either knowingly and intentionally or with reckless disregard for the truth, the defendant was entitled to receive an evidentiary hearing. *Id.* at 155–56, 98 S.Ct. at 2676–77. In addition to protecting the rights of the defendant, the hearing serves to prevent the perpetration of a fraud upon, and the making a mockery of, the judicial process. *United States v. Barone,* 584 F.2d 118, 126–27 (6th Cir.1978) (Keith, J., dissenting), *cert. denied,* 439 U.S. 1115, 99 S.Ct. 1019, 59 L.Ed.2d 73 (1979). The hearing also permits the district court to determine whether in the circumstances of the case "a procedural error in [the] preparation of the warrant ... [may] be harmless within the meaning of Fed.R. Crim.P. 52(a)." *Shorter, supra,* 600 F.2d at 587. These purposes can be effected only if the district court is presented with a fully developed record that is not limited necessarily to the bounds of the affidavit.

In this case, evidence of the issuing magistrate's knowledge of the identity of the preparer of the affidavit would further the purposes of the suppression hearing. In addition to assisting in the determination of whether the affiant either knowingly and intentionally, or with reckless disregard for

---

1. Fed.R.Crim.P. 41(c)(1) provides:
   (c) **Issuance and Contents.**
   (1) Warrant Upon Affidavit.—A warrant other than a warrant upon oral testimony under paragraph (2) of this subdivision shall issue only on an affidavit or affidavits sworn to before the federal magistrate or state judge and establishing the grounds for issuing the warrant. If the federal magistrate or state judge is satisfied that grounds for the application exist or that there is probable cause to believe that they exist, he shall issue a warrant identifying the property or person to be seized and naming or describing the person or place to be searched. The finding of probable cause may be based upon hearsay evidence in whole or in part. Before ruling on a request for a warrant the federal magistrate or state judge may require the affiant to appear personally and may examine under oath the affiant and any witnesses he may produce, provided that such proceeding shall be taken down by a court reporter or recording equipment and made part of the affidavit. The warrant shall be directed to a civil officer of the United States authorized to enforce or assist in enforcing any law thereof or to a person so authorized by the President of the United States. It shall command the officer to search, within a specified period of time not to exceed 10 days, the person or place named for the property or person specified. The warrant shall be served in the daytime, unless the issuing authority, by appropriate provision in the warrant, and for reasonable cause shown, authorizes its execution at times other than daytime. It shall designate a federal magistrate to whom it shall be returned.

the truth, drew a false affidavit, the evidence would enable the district court to determine whether the FBI agents had perpetrated a fraud upon the judicial process. Finally, the testimony proffered by the government would better enable the district court to determine whether the fact that the affidavit was signed by FBI agent Hamilton even though it contained the averments of FBI agent Owens was harmless error. *See United States v. Mendoza,* 491 F.2d 534, 538–39 (5th Cir.1974) (affidavit containing averments of one agent but signed by another was not invalid, even though technically in error, because not result of intentional misrepresentation).

In concluding that a remand is proper in this case, I do not mean to suggest that the findings of the district court were clearly erroneous. As Judge Edwards states, the question of whether the factual determinations that the district court may make on remand will be erroneous will properly be considered "when all the facts are on the record." Nevertheless, to the extent that the district court made its factual determinations solely on the basis of the affidavit,[2] it in my view erred in limiting the scope of its review.

NATHANIEL R. JONES, Circuit Judge, dissenting.

This case is before the Court upon the government's appeal from an order of the district court suppressing evidence seized from the home and car of appellee, Isaac M. Jenkins, pursuant to a "deliberately misleading" search warrant. The government claims that (1) the district court abused its discretion in declining to re-open the suppression hearing after it determined that the search warrant was unlawful and (2) the district court improperly granted Isaac F. Jenkins standing to challenge the warrant. The majority opinion and the concurring opinion reject the standing argument, but accept the U.S. Attorney's argument that the district court erred in refusing to re-open the suppression hearing. Because I can not agree that the district court erred, much less abused its discretion, in deciding not to reopen the suppression hearing, I must dissent.

The majority and the concurring opinions hold that the district court committed reversible error in refusing to re-open the hearing to consider evidence which was not on the affidavit, but which might have been within the Magistrate's personal knowledge. My understanding of the law in this area, however, leads me to believe that the district judge's refusal to consider such evidence was not only within his discretion, it was *required* by applicable Federal statutes and constitutional law. The majority opinion, somewhat curiously, states that Rule 41 is "applicable" to this hearing, but never applies that rule to this case. As the concurring opinion astutely points out, "the warrants at issue in this case are federal in nature and must comply with the provisions of Fed.R.Crim.P. 41 as well as with constitutional requirements."

The text of Rule 41 itself *prohibits* a Magistrate from considering the kind of evidence which the majority view requires him to consider. Rule 41(c)(1) provides:

2. The district court stated in its opinion:

A copy of the affidavit in question is attached to this opinion. The affidavit on its face was misleading and defective. It contained the statement of Agent Owens in narrative fashion as though Owens had been present at the scene of the crime. A reading of the affidavit and record shows that there is no way that the magistrate could have known that these facts were related by Owens to Hamilton. The magistrate would have had to infer unless specifically advised that Hamilton had been made aware of these facts by the allged [sic] victims, Wright and Talley. *Although the magistrate may have had some-*

*thing brought to his attention in addition to the affidavit the Court is not aware of any record taken of additional information. Therefore the Court is limited to review of the affidavit in determining the validity of the search warrant, that being the only information upon which the magistrate must have issued the warrant.* (Emphasis added). Although the magistrate could consider only the affidavit in determining whether probable cause existed for the issuance of a warrant, the district court is not so limited in determining other issues such as the affiant's mental state in including the false statement in the affidavit.

A warrant ... shall issue only on affidavit or affidavits *sworn to before the federal magistrate* and establishing the grounds for issuing the warrant.

The only exception to this rule is for "*sworn* oral testimony" communicated to the Magistrate. In keeping with the plain language of Rule 41(c)(1), this Court in *United States v. Hatcher,* 473 F.2d 321 (6th Cir.1973), stated that the determination of the legality of a search warrant can be informed "only by the statements of fact contained in the affidavit." *See also, United States v. Vasser,* 648 F.2d 507 (9th Cir. 1980); *United States v. Melvin,* 419 F.2d 136, 140 (4th Cir.1969); *United States v. Roth,* 391 F.2d 507, 509 (7th Cir.1967).

The majority somehow conclude that Rule 41 only applies "if [the affidavit] is the only matter presented to the issuing magistrate." I find absolutely no support for this exception to Rule 41. Indeed the Supreme Court in *Whiteley v. Warden,* 401 U.S. 560, 91 S.Ct. 1031, 28 L.Ed.2d 306 (1971), explicitly rejected the reasoning of both the majority and the concurrence. In *Whiteley,* the government sought to salvage an otherwise insufficient search warrant with evidence already *on the record* that the affiant had knowledge of facts not contained in the affidavit and communicated them to the Magistrate. The Supreme Court declared:

> Under the cases of this Court, an otherwise insufficient affidavit cannot be rehabilitated by testimony concerning information possessed by the affiant when he sought the warrant but not disclosed [on the affidavit]. A contrary rule would, of course, render the warrant requirements of the Fourth Amendment meaningless.

401 U.S. at 565, 91 S.Ct. at 1035; *see also Giordenello v. United States,* 357 U.S. 480, 78 S.Ct. 1245, 2 L.Ed.2d 1503 (1958). The majority, by requiring the district court to consider evidence not "sworn to" before the Magistrate establish such a "contrary rule" and render the Fourth Amendment's warrant requirement "meaningless." The language of the Supreme Court, of this Circuit and of Rule 41 clearly precludes the district judge from considering the very evidence for which the majority remand this case. I can not join an opinion which actually finds that the district court abused its discretion in refusing to depart from such established precedent.

In departing from the majority opinion's reasoning in refusing to apply that precedent, the concurrence suggests three alternative grounds for a remand: (1) to assist in the determination of whether the affiant knowingly and intentionally misled the Magistrate, (2) to determine whether the FBI agents perpetrated a fraud upon the justice system, and (3) to determine whether the errors in this case were "harmless."

The concurrence correctly concludes that *Franks v. Delaware,* 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978), entitles the defendant to a hearing where he can show that a *written affidavit* contained a "false statement," which was included "knowingly and intentionally" or with "reckless disregard for the truth." 438 U.S. at 171, 98 S.Ct. at 2684. More than merely entitling the defendant to a hearing, however, *Franks* requires that where

> the allegation of perjury or reckless disregard is established by the preponderance of evidence, and with the *affidavit's* false material set to one side, the *affidavit's* remaining content is insufficient to establish probable cause, the search warrant must be voided and the fruits of the search excluded. (emphasis added).

438 U.S. at 171, 98 S.Ct. at 2684. *Franks* could not more clearly state that the questions of knowing falsehood and reckless disregard for the truth are *factual* ones which the district judge must decide from the *affidavit* alone. District Judge White scrutinized the affidavit and found as a fact that:

> The affidavit on its face was misleading and defective. It contained the statement of Agent Owens in narrative fashion as though Owens had been present at the scene of the crime. A reading of the affidavit and record shows that there is no way that the magistrate could have known that these facts were related by

Owens to Hamilton. The magistrate would have to infer unless specifically advised that Hamilton had been made aware of these facts by the alleged victims, Wright and Talley ... Where the person who signs the affidavits neither took statements from the alleged victims or participated in the investigation but merely repeats what another agent told him, that fact not being apparent in the affidavit requires the conclusion that the affidavit was willfully misleading.

As a reviewing court, we may only overturn Judge White's factual finding that the affidavit was "willfully misleading" if we find that it is "clearly erroneous" Fed.R.Civ.P. 52(a); *see, e.g., Downs v. United States,* 522 F.2d 990, 999 (6th Cir.1975).

After painstaking review of those facts which may properly be considered, I am unable to conclude that Judge White's findings are "clearly erroneous." In the case at bar, not only was the Magistrate not informed of the essential circumstances surrounding the acquisition of the information before him, but he was deliberately misled about the nature of that information. The district court found that the affidavit was "misleading" because it "contained the statement of Agent Owens in narrative fashion as though Owens had been present at the scene of the crime." The information supplied in the affidavit, in reality, was derived from statements made to F.B.I. agents by the victims of the crime. Agent Hamilton, who swore to the veracity of that information, only received the facts surrounding the case from brief statements made to him by Agent Owens.

The first paragraph of the affidavit recounts the events surrounding the collection of a debt from Merry Wright, Jr. Nowhere in that paragraph is there any suggestion that the events recorded were not within the personal knowledge of the affiant. The second page of the affidavit, in a similar manner, reports facts revealed through the hearsay statements of Major Talley, Jr. as if they were derived from firsthand knowledge. Further, Talley's past loan history, his acceptance of loan envelopes from Isaac

M. Jenkins and his encounter with Isaac M. Jenkins and Isaac F. Jenkins were all recorded in the affidavit in narrative fashion, as if they had been witnessed by the agents.

This language effectively concealed the hearsay nature of the information. Had the affidavit been sworn to by Owens, the agent to whom the victims actually gave this information, the narrative would have concealed the fact of simple hearsay. But Owens did not sign the affidavit. Instead, Agent Hamilton, whose understanding of these events stemmed only from the hearsay of Owens upon the hearsay of the victims, swore to the veracity of these facts.

Indeed a careful reading of the affidavit, such as the one Judge White performed, indicates that the agents' clever use of language and sentence structure was designed to give the magistrate the erroneous impression that the agent who "swore to" the reported facts actually had personal knowledge of them. The affidavit's sentences consistently and artfully leave out the person to whom the information was supplied. The affidavit states that "Major Talley, Jr. and Merry Wright, Jr. *advised* in independent separate interviews that ...," and reports that "Talley *advised* that ...," and records that "Talley *stated* that...." The agents employed the only sentence structure which would both make sense and conceal the true identity of the agent to whom the information was given. I agree that we must not hold law enforcement officials to an exacting standard in the "midst and haste of a criminal investigation." *United States v. Ventresca,* 380 U.S. 102, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965). The consistent and careful language of the affidavit in this case, however, precludes any possibility that it was prepared in the heat of police work. The affidavit was prepared shrewdly by agents with vast knowledge of and experience with the requirements of criminal justice. They went to great lengths to lead the Magistrate to believe that the affiant had personal knowledge of the facts on the affidavit. They would not have gone to such great lengths to deceive if the Magistrate really did have

the truth "brought to his attention" in an earlier encounter. I can not avoid the conclusion that the agents in this case "willfully misled" the Magistrate in violation of the *Franks* requirements. But I need not be so convinced. As a reviewing court, we need only find that Judge White's findings are not "clearly erroneous." I do not know how it can be concluded on this record that those findings are "clearly erroneous."

The majority and the concurrence avoid concluding that the district judges' factual findings were "clearly erroneous" by asserting that such a conclusion can only be made after all the facts are on record. As I have endeavored to make clear, however, the district judge could not have "abused his discretion" in failing to re-open the suppression hearing when to do so would be contrary to all legal precedent. Moreover, the district court explicitly found that Assistant United States Attorney Schuster's motion to reopen the suppression hearing was not timely. At the close of the hearing, Schuster merely blurted out that "evidence not solicited from Special Agent Owen has come to our attention." Any such evidence must have been known to Agent Owens before that last-minute attempt to re-open the hearing. I am convinced that the district court did not err as a matter of law in declining to consider evidence not *"sworn to"* before the magistrate and certainly did not abuse his discretion in refusing to re-open at the tardy urging of the Assistant U.S. Attorney the suppression hearing to consider any such evidence. Accordingly, I can not join that portion of the Court's opinion which sanctions a remand for the purpose of considering evidence not properly before the Magistrate.

Nor can I join any remand of this cause for a determination of whether a mockery of justice has been performed. The concurrence relies for the proposition that such a remand is necessary upon Judge Keith's dissent in *United States v. Barone,* 584 F.2d 118 (6th Cir.1978). I do not understand Judge Keith's dissent to support the position of the concurrence. Judge Keith stressed that "law enforcement agents, if unchecked, could make a mockery out of a judicial officer's duty to reach a decision on the issuance of a search warrant." 584 F.2d at 126. In order to deter such a mockery, this Circuit has gone so far as to disregard the second *Franks* requirement that the subject of the falsity be "material" to probable cause. In *United States v. Luna,* 525 F.2d 4 (6th Cir.), *cert. denied,* 424 U.S. 965, 96 S.Ct. 1459, 47 L.Ed.2d 732 (1976), this Court held that where agents intend to deceive a neutral magistrate, the evidence seized must be suppressed regardless of its materiality. In order to "prevent fraud upon the judicial process," the *Luna* decision holds enforcement agents to a standard more exacting than that established in *Franks.* Far from sanctioning a remand of this case, therefore, Judge Keith's opinion in *Barone* supports the district court's suppression order where as here the agents intended to deceive a neutral judicial officer. Thus, I am unable to join in an opinion which relies upon Judge Keith's *Barone* opinion to invalidate the district court's suppression order.

Not only does Judge Keith's opinion wholly support the district court's suppression order, that opinion effectively refutes the propriety of the concurrence's call for a remand to apply a harmless error analysis. Judge Keith's opinion, on which the concurrence relies, reiterates our teaching in *Luna.* The *Luna* decision obviates the need to consider the materiality of the falsehood where the agents intend to deceive a judicial officer. The district court found as a fact that the agents willfully misled the Magistrate. Any remand for a consideration of whether the falsity was "harmless," therefore, is directly contrary to *Luna.*

Even if the *Luna* analysis does not apply, however, the district court implicitly found that the *Franks* materiality requirement had been met. Indeed the falsehood encompassed the *entire* affidavit, effectively negating any basis for probable cause. The affidavit, from its first paragraph recounting the events surrounding the collection of Wright's debt to its final paragraph repeating a telephone conversation between Jenkins and Talley, reads like a narrative, giv-

ing the Magistrate the mistaken impression that Agent Hamilton had personal knowledge of all of the evidence. In fact, Hamilton had no personal knowledge of any of the events recounted in the affidavit. When the "material that is the subject of the alleged falsity or reckless disregard is set to one side," therefore, no evidence remains from which a determination of probable cause can justifiably be made. *See Franks*, 438 U.S. at 171–72, 98 S.Ct. at 2684.

Moreover, any such remand is directly contrary to this Court's opinion in *United States v. Shorter*, 600 F.2d 585 (6th Cir. 1979) (Edwards, J.). That opinion condoned a "harmless error" analysis of an agent's innocent failure to follow the technical requirements of procuring a "duplicate original warrant." Fed.R.Crim.P. 52(a) was particularly appropriate to that procedural error. Our opinion in *Shorter,* however, establishes a clear distinction between a technical procedural error and a substantive defect. The appellant in *Shorter* also argued that the agents violated Fed.R.Crim.P. 41(c)(2)(D) by failing to "place under oath each person whose testimony forms the basis" for the warrant. In a scholarly opinion, Judge Edwards' wrote that because "the oath requirement is constitutional in origin," Rule 41(c)(2)(D) "speaks more of substance than procedure and must be obeyed." 600 F.2d at 589.

The challenged police activity in the case before us, as well, speaks more of substance than procedure. The government urges the district court to consider evidence not "sworn to" before the Magistrate. The "oath requirement" is therefore at the heart of this case. Like the prohibition at issue in *Shorter,* the prohibition at issue in this case is "constitutional in origin." I agree with Judge Edwards' *Shorter* opinion that a Rule 52(a) "harmless error" analysis is wholly inappropriate where such substantial rights are involved. Because I believe that *Franks, Luna, Shorter* and Rule 52(a) provide four independent grounds for pro-

hibiting a "harmless error" analysis in this case, I can not join in a remand for any such analysis.

I am not unaware of the gravity of the crimes charged in this case, nor am I unsympathetic to the needs of police officers in the heat of their work. As the majority opinion makes clear, however, the crimes charged "are not before us on the merits of this appeal." Furthermore, as I trust my opinion makes clear, the affidavit in this case was not the sloppy product of necessarily hasty police work; rather, as Judge White found, the agents *deliberately* misled a judicial officer in order to create the impression of probable cause. In light of these circumstances, I am unable to concur in a remand of this case for the consideration of evidence which simply can not, consistently with every available legal precedent in this area, be properly considered. I therefore dissent.