**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Chester W. CAMPBELL,
Defendant–Appellant.**

No. 88–1852.

United States Court of Appeals,
Sixth Circuit.

Argued May 16, 1989.

Decided June 27, 1989.

Rehearing and Rehearing En Banc
Denied July 31, 1989.

Keith Corbett, Asst. U.S. Atty., John R. Roth, Asst. U.S. Atty. (argued), Civ. Div., Detroit, Mich., for the U.S.

Carl Ziemba (argued), Detroit, Mich., for Chester Wheeler Campbell.

Before MILBURN and NELSON, Circuit Judges, and PECK, Senior Circuit Judge.

DAVID A. NELSON, Circuit Judge.

The question presented in this case is whether deliberate false statements in an affidavit supporting an application for a search warrant compel the voiding of the warrant even if the false statements are unnecessary to a finding of probable cause. We believe the Supreme Court answered that question in the negative in *Franks v. Delaware*, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978), and we conclude that this court's contrary decision in *United States v. Luna*, 525 F.2d 4 (6th Cir.1975), *cert. denied*, 424 U.S. 965, 96 S.Ct. 1459, 47 L.Ed.2d 732 (1976), has been effectively overruled. In the case at bar the district court set the falsehoods to one side and evaluated the sufficiency of the affidavit on the basis of what was left. That, we believe, was the correct procedure.

## I

In July of 1987, a federal magistrate approved a search warrant for the person of defendant Chester Campbell and two cars Campbell was using. The government's application for the search warrant was supported by an affidavit, sworn to by an FBI agent, relating that three independent, reliable informants had seen the defendant carrying various firearms on a number of occasions. Two informants were also said to have learned from unidentified third persons that Campbell routinely carried firearms.

The warrant was promptly executed, and the search turned up a pen gun, a derringer pistol, a .25 caliber pistol with a silencer, a .45 caliber semi-automatic pistol, a .22 caliber revolver, a .357 magnum revolver, a .38 caliber revolver, a 12 gauge pump shotgun, a bomb, 785 grams of marijuana, an ounce of cocaine, over 170 grams of heroin, and nearly $11,000 in cash. Campbell was indicted for possession with intent to distribute heroin, cocaine, and marijuana, in violation of 21 U.S.C. § 841(a)(1); for possession of an unregistered destructive device, in violation of 26 U.S.C. § 5861(d); for possession of a firearm with an obliterated serial number, in violation of 26 U.S.C. § 5861(h); for possession of a firearm with a silencer, in violation of 18 U.S.C. § 924(c)(1); and as a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g). (The indictment charged seven previous felony convictions, including a conviction for second-degree murder.)

The defendant moved to suppress the evidence seized under the warrant, alleging that judicial approval of the search warrant had been obtained through a supporting affidavit containing deliberate false statements. Following the procedure set forth in *Franks v. Delaware, supra,* the district court held an evidentiary hearing on the defendant's allegations. The district court found that the affidavit contained four deliberate false statements; that finding is not challenged here. All four falsehoods involved the invention of fictitious persons to mask the identity of government informants. In the following representative averment, for example, the information provided by Informant 3 was in fact based on what Informant 3 had heard directly from defendant Campbell, rather than from an unidentified "individual" interposed between defendant Campbell and Informant 3:

> "FBI–3 further advised this affiant that FBI–3 learned from an individual who was told by CHESTER CAMPBELL that CHESTER CAMPBELL, when in his vehicle, will conceal a firearm in a location inside the vehicle where it can be easily and quickly reached by CAMPBELL."

The district court concluded that the affidavit's remaining content sufficiently established probable cause, and the court denied the motion to suppress. After a jury trial, the defendant was found guilty on all counts. The district court sentenced the defendant to 30 years on one of the drug charges; lesser sentences, to run concurrently, were imposed on the various other charges. This appeal followed.

## II

■ The Supreme Court addressed the problem of partially false search warrant affidavits in *Franks v. Delaware,* 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978). The Court held there that a defendant is entitled to an evidentiary hearing on the veracity of the statements of the affiant in a warrant affidavit if and only if (1) there is a substantial preliminary showing that specified portions of the affiant's averments are deliberately or recklessly false *and* (2) a finding of probable cause would not be supported by the remaining content of the affidavit when the allegedly false material is set to one side. "[I]f, when material that is the subject of the alleged falsity or reckless disregard is set to one side, there remains sufficient content in the warrant affidavit to support a finding of probable cause, no hearing is required." *Id.* at 171–72, 98 S.Ct. at 2684.

The Court described the defendant's burden at the hearing as follows:

> "In the event that at the hearing the allegation of perjury or reckless disregard is established by the defendant by

a preponderance of the evidence, and, *with the affidavit's false material set to one side, the affidavit's remaining content is insufficient to establish probable cause,* the search warrant must be voided and the fruits of the search excluded to the same extent as if probable cause was lacking on the face of the affidavit." *Id.* at 156, 98 S.Ct. at 2676 (emphasis supplied).

The Supreme Court has also applied the *Franks* principle where a warrant has been approved in reliance on an affidavit containing information obtained through illegal surveillance. See *United States v. Karo,* 468 U.S. 705, 719, 104 S.Ct. 3296, 3305, 82 L.Ed.2d 530 (1984), where the Court held that warrantless monitoring of a beeper in a private residence violated the Fourth Amendment, but that a warrant obtained on the strength of an affidavit containing information gathered through such surveillance was nevertheless valid "if sufficient untainted evidence was presented in the warrant affidavit to establish probable cause."

Every other circuit has read *Franks* to require that a deliberate falsehood be material if the warrant is to be voided because of falsehood. See *United States v. Paradis,* 802 F.2d 553, 558 (1st Cir.1986); *United States v. Ferguson,* 758 F.2d 843, 849 (2d Cir.), *cert. denied,* 474 U.S. 841, 106 S.Ct. 124, 125, 88 L.Ed.2d 102 (1985); *United States v. Calisto,* 838 F.2d 711, 714–16 (3rd Cir.1988); *United States v. Taylor,* 857 F.2d 210, 215 (4th Cir.1988); *United States v. Cuevas–Sanchez,* 821 F.2d 248, 252 (5th Cir.1987); *United States v. Malsom,* 779 F.2d 1228, 1235 (7th Cir.1985); *United States v. Leisure,* 844 F.2d 1347, 1357 (8th Cir.), *cert. denied,* —— U.S. ——, 109 S.Ct. 324, 102 L.Ed.2d 342 (1988); *United States v. Whitworth,* 856 F.2d 1268, 1280–81 (9th Cir.1988), *cert. denied,* —— U.S. ——, 109 S.Ct. 1541, 103 L.Ed.2d 846 (1989); *United States v. Barrera,* 843 F.2d 1576, 1580 (10th Cir.), *cert. denied,* —— U.S. ——, 109 S.Ct. 153, 102 L.Ed.2d 124 (1988); *United States v. Kirk,* 781 F.2d 1498, 1505–06 (11th Cir.1986); *United States v. Richardson,* 861 F.2d 291, 294 (D.C.Cir.1988) (per curiam), *cert. denied,* —— U.S. ——, 109 S.Ct. 1325, 103 L.Ed.2d 593 (1989).

The defendant relies on a pre-*Franks* Sixth Circuit case, *United States v. Luna,* 525 F.2d 4 (6th Cir.1975), *cert. denied,* 424 U.S. 965, 96 S.Ct. 1459, 47 L.Ed.2d 732 (1976), where we declared that "knowing use of a false statement by the affiant with intent to deceive the court ... must lead to suppression of the evidence in order to prevent fraud upon the judicial process," suppression being required "even if the statement can be said to be immaterial to the issue of probable cause." *Id.* at 8. The question presented in the case at bar is whether *Luna* survived *Franks.* We conclude that it did not.

We found it unnecessary to decide the question in *United States v. Barone,* 584 F.2d 118 (6th Cir.1978), *cert. denied,* 439 U.S. 1115, 99 S.Ct. 1019, 59 L.Ed.2d 73 (1979), since the false statements in *Barone* were not intended to deceive the trial judge and thus did not require suppression even under the stricter standard of *Luna.* Although the court in *Barone* was at pains to say that it would reach the same result under either *Luna* or *Franks,* 584 F.2d at 122, a number of more recent decisions, one of which was written by the author of *Luna,* have implicitly repudiated the rule of the earlier case. See *United States v. Jenkins,* 728 F.2d 396, 397 (6th Cir.1984) ("an affidavit ... may be challenged successfully only on proof that it contains 'deliberate falsehood or reckless disregard for the truth' without which the affidavit would be an insufficient basis for the warrant"). In *United States v. Sangineto–Miranda,* 859 F.2d 1501, 1514 (6th Cir.1988), the court noted that even if a particular statement in an affidavit were false (a contested issue in that case), the remaining content of the affidavit was sufficient to establish probable cause. And in *Yancey v. Carroll County,* 876 F.2d 1238, 1243 (6th Cir. 1989), a civil rights case brought against police officers, we wrote that "an officer cannot rely on a judicial determination of probable cause if that officer knowingly makes false statements to the judge such that but for these falsities the judge would not have issued the warrant."

The defendant argues that while *Franks* requires the lower courts to void warrants under conditions that may not be present here, it does not preclude the lower courts from voiding warrants where *Franks* would not require that result. Thus we are asked to exercise our supervisory power to continue to enforce the stricter *Luna* test in this circuit. We decline to do so. The exclusionary rule has serious social costs, as recent Supreme Court cases have repeatedly emphasized, see, *e.g., United States v. Leon*, 468 U.S. 897, 908–13, 104 S.Ct. 3405, 3413–15, 82 L.Ed.2d 677 (1984), and we cannot muster much enthusiasm for returning a man like Mr. Campbell to the streets because the affiant whose affidavit led to the discovery of Campbell's bomb, guns and drugs was so fearful of the safety of his informants that he chose to dilute his affidavit with a layer of fictitious hearsay. *Luna* was concerned with the problem of deliberate lies made to strengthen the government's showing of probable cause. The false statements in the present case, while deliberate, were not made to bolster the showing of probable cause—and it would be more than a little anomalous to void a warrant because it understated the government's case.

It is clear that we are not free to use our supervisory power in a way that "would conflict with the harmless error inquiry mandated by the Federal Rules of Criminal Procedure." *Bank of Nova Scotia v. United States*, —— U.S. ——, ——, 108 S.Ct. 2369, 2373, 101 L.Ed.2d 228 (1988); see also *United States v. Hasting*, 461 U.S. 499, 103 S.Ct. 1974, 76 L.Ed.2d 96 (1983). To require that a warrant be voided and all evidence seized thereunder be suppressed because of immaterial false statements would fly in the face of the harmless error rule. We also note that the materiality rule is consistent with our construction of federal statutes criminalizing false statements. See *United States v. Adams*, 870 F.2d 1140 (6th Cir.1989), (perjury); *United States v. Abadi*, 706 F.2d 178 (6th Cir.), *cert. denied*, 464 U.S. 821, 104 S.Ct. 86, 78 L.Ed.2d 95 (1983) (false statements in matters within jurisdiction of federal agency); see also *United States v. Korman*, 614

F.2d 541, 551 (6th Cir.) (Merritt, J., dissenting) ("A rule requiring automatic suppression without regard to the materiality of false information in a search warrant affidavit would be overkill just as would conviction of securities fraud or perjury for irrelevant misrepresentation."), *cert. denied*, 446 U.S. 952, 100 S.Ct. 2918, 64 L.Ed. 2d 808 (1980).

### III

We turn now to the question whether the untainted portion of the affidavit in this case sufficiently supported a finding of probable cause under the "totality of the circumstances" test enunciated in *Illinois v. Gates*, 462 U.S. 213, 238–39, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527 (1983). Setting to one side the false statements, the district court concluded that the five totally truthful paragraphs of the affidavit contained sufficient information to justify a finding of probable cause. We agree.

█ The defendant makes two main arguments on the probable cause issue. First, he argues that since the affidavit here was drafted by an agent who had graduated from law school, aided by a federal prosecutor, the warrant should be held to a higher standard than other warrants. We reject this novel argument. All sworn statements ought to be truthful, and lay people know this as well as lawyers do. Untruths must be disregarded whatever the background of the affiant. Once tainted statements have been set aside, the sufficiency of the balance must be determined on its merits, and not on the basis of how culpable we may think the affiant is for forswearing himself.

█ The defendant also plays a game of flyspecking that almost no affidavit could withstand. The defendant's analysis of one typical paragraph of the affidavit will serve to illustrate the technique. Paragraph 4(g) of the affidavit reads:

"During the first week in April, 1987, FBI–3 advised the affiant that FBI–3 has known CHESTER CAMPBELL for several years and FBI–3 knows through personal knowledge and observation that

CHESTER CAMPBELL carries a firearm when he leaves his residence, especially at night. FBI-3 has observed on several occasions CHESTER CAMPBELL have in his possession various firearms, described as handguns and shotguns."

The defendant deals with this paragraph as follows:

"What can the first sentence of the above paragraph possibly mean? Does it mean that every time the defendant leaves his home he carries a firearm? Does this mean that during the several years referred to, the defendant carried a firearm when he left his home? How did FBI-3 know that? Was he present each and every time defendant left his home during these several years? And how long is several years? What does the phrase 'especially at night' mean? If defendant carries a firearm every time he leaves his home, this means both day and night. There is no need to state 'especially at night.' ... And when was the last time that FBI-3 observed the defendant leave his home carrying a firearm. FBI-3 can truthfully claim to have known defendant for 'several years' and still not even seen [sic] the defendant for the past 'several years' of the 'several years' that he has known defendant...."

This is precisely the sort of hair-splitting analysis the Supreme Court has directed the lower courts to eschew in favor of a common sense "totality of the circumstances" test. The untainted paragraphs of the affidavit contain information from three independent, reliable informants concerning the defendant's routine possession of firearms on his person. These paragraphs amply support a finding of probable cause.

The district court properly denied the defendant's motion to suppress. The defendant's conviction is AFFIRMED.