**UNITED STATES of America, Plaintiff,**

v.

**Donna M. ABREU, et al., Defendants.**

**No. CR2–91–76(1)(2)(3).**

United States District Court,
S.D. Ohio, E.D.

Oct. 22, 1991.

Mike Burns, Asst. U.S. Atty., Columbus, Ohio, for plaintiff.

J. Boyd Binning, Columbus, Ohio, for defendant Donna Abreu.

Richard Cline, Columbus, Ohio, for defendant Eddie DeOchoa.

Earl K. Desmond, Columbus, Ohio, for defendant Rachael Delesdernier.

## OPINION AND ORDER

GEORGE C. SMITH, District Judge.

This matter is before the Court pursuant to a hearing held on Tuesday, October 8, 1991, as provided in *Franks v. Delaware,* 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978).

After thoroughly contemplating all matters presented in the written briefs and at the oral hearing, defendants' Motion to Suppress is hereby DENIED.

## FACTS

The pertinent facts are as follows:

On March 26, 1991, Detective Craig Lee received information from a confidential source that Eddie DeOchoa was in possession of a large sum of cash, was dealing drugs, and was staying at the Red Carpet Inn located at Route 161 and I–71 in Columbus, Ohio. Detective Lee contacted the Red Carpet Inn and determined that DeOchoa and Donna Marie Abreu were staying in Room 115 at the motel. The room was in Abreu's name but DeOchoa had made cash payments to the motel for the room. Detective Lee also determined that several long distance telephone calls were being made from Room 115 to Miami, Florida. Several of these calls were to the Royal Palm Palace, a location that is known to the Drug Enforcement Agency as being involved with the distribution of cocaine.

On March 28, 1991, Detective Lee in conjunction with other officers of the Columbus Police Department, initiated a surveillance at the Red Carpet Inn. Detective Lee discovered that DeOchoa and Abreu had checked out of the motel and was informed that Abreu was returning her rented vehicle to the Agency Rental Car office at 5204 E. Main Street, Columbus, Ohio. Detective Lee verified that Abreu rented a vehicle from Agency Rental Car on March 1, 1991. Detective Lee also determined that she rented the car while her own personal vehicle was being repaired at Germain Hundai in Columbus, Ohio. Detective Lee proceeded to Germain Hundai and verified that Abreu's vehicle was there and that she was en route to pick up the vehicle.

Surveillance was conducted at Germain Hundai by the Columbus Police Department and at approximately 7:30 p.m. officers were there when Abreu arrived at Germain Hundai to pick up her vehicle. At this time, DeOchoa accompanied her in a red pick-up truck and two other individuals later identified as Rachel Delesdernier and Ruben L. Cruz were observed in the rental vehicle with Ms. Abreu. Abreu took possession of her vehicle from Germain Hundai and upon departure was followed by officers of the Columbus Police Department to the Red Roof Inn located at 750 Morse Road, Columbus, Ohio where Abreu, Delesdernier and Cruz entered Room 106.

At the same time, other officers of the Columbus Police Department were following DeOchoa in his red pick-up truck. DeOchoa was observed by these same officers driving in a very erratic manner in that he changed lanes frequently, drove at alternating slow and high rates of speed, and even reversed directions. Because of his reckless and dangerous driving through a construction area on I–71 in Columbus, a marked Columbus Police Department vehicle attempted to stop DeOchoa for a traffic violation. DeOchoa fled at high rates of speed and did not stop until he reached the Red Roof Inn Parking lot at 750 Morse Road, Columbus, Ohio. At this time DeOchoa was arrested for reckless driving by Columbus Police officers and his pick-up truck was impounded. At the time of his arrest, DeOchoa had $978 currency in his pocket and a further inventory of the vehicle revealed an additional $15,520 in cash. The purse in which the $15,520 was found also contained Abreu's personal identification.

At approximately the same time of DeOchoa's arrest, Abreu, Delesdernier and Cruz left Room 106 of the Red Roof Inn. Delesdernier who was driving the rental car with the other two defendants as passengers changed her direction upon seeing the police cruisers and left the Red Roof Inn. She then proceeded across the street to a Sohio gas station where she stopped and was seen using a pay telephone. At this time, the Columbus Police Department arrived and placed the three defendants in police cruisers.

Shortly thereafter Columbus Police Detective Ben Casuccio arrived at the Sohio gas station and heard the same pay telephone ringing that Abreu had just completed using. Detective Casuccio answered the phone and identified himself as being associated with defendants. During the course of the conversation, Detective Casuccio asserts that the other individual identified himself as "Woo Wop". Detective Casuccio further asserts that "Woo Wop" is an alias for one Ronnie Alls who is well known as a Columbus drug dealer and was personally arrested by Detective Casuccio on drug charges on an earlier date. During the course of the conversation Detective Casuccio asserts that "Woo Wop" questioned as to whether or not his "stuff" was still in the room and if so he would come to pick it up. Detective Casuccio later informed the Magistrate issuing the search warrant that "stuff" is known to him to be a common reference to illicit drugs.

Detective Lee and Detective Casuccio then proceeded to Franklin County Municipal Court Judge Marvin S. Romanoff to seek a search warrant for Room 106 of the Red Roof Inn. On March 28, 1991, at 11:50 p.m. Judge Romanoff issued a search warrant consisting of three typewritten pages and an additional page of information handwritten by Judge Romanoff.

Shortly thereafter, Columbus police officers executed the search warrant at Room 106 of the Red Roof Inn. The search resulted in the seizure of:

1. Approximately 480.9 grams gross, of suspected cocaine powder;

2. Approximately 16.4 grams gross, of suspected cocaine base "crack";

3. A measuring cup;

4. Baking soda;

5. Zip lock baggies;

6. Three telephone pagers;

7. Several rounds of hand gun ammunition; and

8. A triple beam scale.

All of the items above were deemed by the Columbus Police Department as commonly being utilized in the manufacture and distribution of cocaine and cocaine base. Most of the items listed above were found concealed in luggage upon which an identification tag for Donna Abreu appeared.

Inventory of the seized rental vehicle revealed a Sanyo microwave oven in the trunk. The microwave contained a suspected cocaine base residue inside.

Based upon the results of the search of Room 106, defendants in this matter were placed under arrest.

Defendants challenge the validity of the search warrant executed by Judge Romanoff claiming that the underlying affidavit contained deliberate falsehoods or a reckless disregard for the truth.

## LAW AND ANALYSIS

[1] In *Franks v. Delaware*, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978) the United States Supreme Court articulated a standard by which an underlying affidavit in support of a search warrant could be challenged by the defendant. While recognizing that the Supreme Court held that there is a presumption of validity with respect to the affidavit supporting the search warrant, this Court proceeded in the matter with consideration of the language as set forth in the *Franks* decision:

To mandate evidentiary hearing, the challenger's attack must be more than conclusory and must be supported by more than a mere desire to cross examine. There must be allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by an offer of proof. They should point out specifically the

portion of the warrant affidavit that is claimed to be false; and they should be accompanied by a statement of supporting reasons. Affidavits of sworn or otherwise reliable statements of witnesses should be furnished, or their absence satisfactorily explained. Allegations of negligence or innocent mistake are insufficient. The deliberate falsity or reckless disregard whose impeachment is permitted today is only that of the affiant, not of any non-governmental informant. Finally, if these requirements are met, and if, when material that is the subject of the alleged falsity of reckless disregard is set to one side, there remains sufficient content in the warrant affidavit to support a finding of probable cause, no hearing is required. On the other hand, if the remaining content is insufficient, the defendant is entitled under the Fourth and Fourteenth Amendments, to his hearing. 438 U.S. at 171, 98 S.Ct. at 2684.

After reviewing the brief and affidavit submitted by the defendant, as well as the memo contra submitted by the Government, this Court found that the defendant had met the criteria as set forth in *Franks.* Accordingly, the Court conducted an evidentiary hearing in this matter on October 8, 1991.

During the course of the oral hearing counsel for defendants pointed to two items in the handwritten portion of the affidavit as evidence of a deliberate falsehood or reckless disregard of the truth on the part of Detective Casuccio. Defendants argued that if the Court concurred, then the finding of probable cause on the part of Judge Romanoff was incorrect and that the search warrant must be deemed invalid.

Defendants specifically contest that portion of the handwritten page of the search warrant which provided: "Det. Casuccio then picked up the phone and engaged in a conversation with a known drug dealer who uses the nickname of "Woo Wop" and is known to Det. Casuccio as Ronnie Alls." Defendants further contest the validity of the sentence which provided: "Det. Casuc-

cio has previously arrested Mr. Alls for drug-related offenses and knew Mr. Alls' voice."

During his sworn testimony before the Court, Detective Casuccio related the course of his conversation on the pay telephone at the Sohio station to the questioning Assistant U.S. Attorney as follows:

A. (Det. Casuccio) Well, at that time Detective Wilson and the uniformed officers had just gotten the women out of the vehicle and Detective Wilson was advising them of what the circumstances were, why we were stopping them and so forth. I then approached Detective Wilson and explained to him that, you know, the circumstances over there. About that time the telephone rang.

Q. (AUSA Burns) Did you answer the phone?

A. Yes.

Q. Did you recognize the voice on the phone?

A. The voice on the phone sounded familiar to me, yes.

Q. Did the person on the other end of the phone identify themselves?

A. Eventually through the course of the conversation we had he identified himself by a nickname that is known to me, yes.

Q. Which nickname was used?

A. Woo Wop. (Tr. 16–18)

Detective Casuccio further testified that a previous assignment in the Youth Violence Section Unit of the Columbus Police Department entailed "several encounters" with "Woo Wop" also known as Ronald Alls. (Tr. 18)

Defendants further disputed Detective Casuccio's statement that he had previously arrested Ronnie Alls on a drug related charge. Defendant submitted into evidence, under seal, court records which were stipulated by parties as true and accurate, indicating no arrest or conviction on any drug related charge for Ronnie Alls, Woo Wop, or any member of the Alls family.

Detective Casuccio, when questioned, indicated that while he had never "actually

physically arrested him," he had been present during at least one of Ronald Alls' previous arrests. He further testified that the reference to a "drug related offense" related to Alls' arrest at a location near which an arrest was being made for aggravated trafficking of drugs. (Tr. 19–20)

During the course of his cross examination, counsel for defendant Abreu questioned Detective Casuccio as to this inconsistency. The following exchange occurred:

> Q. (Mr. Binning) Did you state to Judge Romanoff in response to questions by him on March 28 that you had arrested Ronnie Alls in the past?
>
> A. (Det. Casuccio) As I stated before, I told the judge when he asked me these questions that I knew of Mr. Alls' arrest; that I had been there during his arrest, and I *mistakenly stated* that I had personally arrested Mr. Alls, yes. (Tr. 26) (emphasis added).

Based upon the testimony at the oral hearing defendants asserted that Detective Casuccio "blatantly lied to Judge Romanoff". (Tr. 63). Defendants then requested the Court to strike that portion of the search warrant written in Judge Romanoff's own hand, and therefore to declare the search warrant invalid and the materials retrieved as a result of that search warrant to be declared as inadmissible as evidence.

In coming to its determination, the Court first turns to *Franks v. Delaware,* 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978), which provides in pertinent part:

> [W]e hold that, where the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request. In the event that at the hearing the allegation of perjury or reckless disregard is established by the defendant by a preponderance of the evidence, and, with the affi-

davit's false material set to one side, the affidavit's remaining content is insufficient to establish probable cause, the search warrant must be voided and the fruits of the search excluded to the same extent as if probable cause was lacking on the face of the affidavit. *Id.* at 155–156, 98 S.Ct. at 2676.

In reviewing the sworn testimony of Detective Casuccio at the oral hearing, the Court is satisfied that the detective was able to determine the caller to be "Woo-Wop" based upon his own identification as such. The Court's confidence in Detective Casuccio's memory relating to defendant Alls' alleged prior drug related activity and arrest by the detective is lacking. Though difficult to prove the negative, counsel for defendants have provided this Court with sufficient evidence indicating that Alls lacks an arrest record for drug related activities or that an arrest was made personally by Detective Casuccio.

Though admittedly "mistaken" this Court cannot conclude that Detective Casuccio was "deliberately falsifying" his affidavit nor that his error was in "reckless disregard for the truth." However, though not rising to the standard as articulated in *Franks v. Delaware,* this Court shall exercise all due caution and strike the language in question from the warrant that relates in the handwritten portion to "known drug dealer" and, in the last sentence, that Detective Casuccio "has previously arrested Mr. Alls for drug related offenses."

In contemplating the impact of the stricken testimony to the search warrant, the Court again turns to *Franks v. Delaware* which stated:

> [I]n certain circumstances, a challenge to a warrant's veracity must be permitted, we derive our ground from language of the Warrant Clause itself, which surely takes the affiant's good faith as its premise: [N]o Warrants shall issue, but upon probable cause, supported by oath or affirmation.... Judge Frankel, in *United States v. Halsey,* 257 F.Supp. 1002, 1005 (S.D.N.Y.1966), aff'd, Docket No. 31369 (C.A. 2, June 12, 1967) (unreported), put the matter simply: [W]hen the Fourth

Amendment demands a factual showing sufficient to comprise the 'probable cause' the obvious assumption is that there will be a *truthful* showing (emphasis in original). This does not mean 'truthful' in the sense that every fact recited in the Warrant Affidavit is necessarily correct, for probable cause may be founded upon hearsay and upon information received from informants, as well as upon information within the affiant's own knowledge that sometimes must be garnered hastily. But surely it is to be 'truthful' in the sense that the information put forth is believed or appropriately accepted by the affiant as true. *Id.* at 161–165, 98 S.Ct. at 2679–81.

The United States Court of Appeals for the Sixth Circuit in following *Franks v. Delaware,* has given guidance as to the validity of the search warrant absent the stricken portions. In such circumstances the correct procedure is to set the stricken portion to one side and evaluate the sufficiency of the affidavit on the basis of the remaining portions. *U.S. v. Campbell,* 878 F.2d 170 (6th Cir.1989). In determining the validity of the search warrant based upon the remaining portions the Court turns to *Illinois v. Gates,* 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983), which provides that probable cause is to be determined under the "totality of the circumstances" analysis.

Reviewing the remaining portions of the underlying affidavit, this Court finds there was a substantial basis for determining the existence of probable cause. There is sufficient corroborating evidence resulting from the investigation following the informant's tip to believe that the magistrate had a substantial basis for concluding that a search would uncover evidence of wrongdoing at the location described. *See Illinois v. Gates. Id.* Accordingly, this Court finds that the search warrant was indeed valid and the results of the subsequent search shall be eligible to be submitted into evidence in this matter.

## CONCLUSION

While recognizing that haste is often a factor in the preparation of the underlying affidavit in support of a request for a search warrant and its ultimate processing, the Court strongly cautions law enforcement officials that they are responsible to make use of any and all resources to prevent errors such as those found in the instant matter.

Defendant's Motion to Suppress is not well taken and is hereby DENIED.

IT IS SO ORDERED.