UNITED STATES of America,
Plaintiff–Appellee,

v.

Juan VASQUEZ DE LA PAZ,
Jr., Defendant–Appellant.

No. 03–1053.

United States Court of Appeals,
Sixth Circuit.

June 24, 2004.

On Appeal from the United States District Court for the Eastern District of Michigan.

James A. Brunson, Asst. U.S. Attorney, Michael Hluchaniuk, Asst. U.S. Attorney, U.S. Attorney's Office, Bay City, MI, for Plaintiff–Appellee.

Kenneth R. Sasse, Federal Defender's Office, Flint, MI, for Defendant–Appellant.

Before: DAUGHTREY and CLAY, Circuit Judges, and MCCALLA,* District Judge.

PER CURIAM.

The defendant, Juan Vasquez de la Paz, Jr., entered into a conditional guilty plea to drug trafficking charges, reserving the right to appeal the district court's denial of his motion to suppress evidence seized in a warrant-based search of a residence where he was staying as a house guest. The defendant's motion alleged that the affidavit underlying the search warrant contained statements that were false or made with reckless disregard for the truth, in violation of *Franks v. Delaware*, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978). Because we find no reversible error in connection with the district court's ruling to the contrary, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

Defendant Vasquez was charged with conspiracy to distribute cocaine and with distribution of cocaine, along with co-defendants Jose Montes (referred to in the search warrant as "Hosea") and the defendant's brother, Alfredo Vasquez (apparently known as Luis and referred to in the search warrant as "Louie"). The charges resulted from confidential information provided in October 2001 to Michigan law enforcement officers in the Saginaw area who were part of the Bay Area Narcotics Enforcement Team (BAYANET). That information indicated that several individuals from Texas were working with someone in Tuscola County, Michigan, in furtherance of a scheme to sell cocaine in the Saginaw area. On the basis of a Texas phone number provided by the confidential informant, the officers obtained telephone records indicating that calls were being placed from the Texas number to a residence at 5710 French Road, located in Columbia Township in Tuscola County.

The officers called the Texas number and spoke with two men, one named Jose (later identified as Montes) and another named Luis (later identified as Alfredo Vasquez) to set up a cocaine buy. In order to induce them to bring cocaine to the Michigan area, undercover officer Michael Winters wired $2000 to Texas in mid-October. The following day, Winters met Montes and Alfredo Vasquez at a Sunoco gas station called the Express Stop, located on highway M–81 in the Saginaw area and was provided with a two-ounce sample of cocaine. Winters arranged to meet Montes at the Express Stop on November 29, 2001, to purchase $4000 worth of cocaine. Montes arrived in

* The Hon. Jon Phipps McCalla, United States District Court for the Western District of Ten- nessee, sitting by designation.

a red pickup truck driven by a white male, later identified as John Ales. The truck was registered to a Judy Ales. John Ales stood outside the truck but did not enter the undercover vehicle with Montes to make the transfer. Montes told Winter that he and the others were staying at the Aleses' residence and that they were paying Ales with cocaine and money for staying there. However, testifying later at the suppression hearing, Winters could not say whether any of the $4000 was actually given to Ales.

In early December 2001, Montes gave the officers the telephone number at the Aleses' residence so that the officers could contact him to arrange further transactions. On December 5, 2001, Montes and Winters exchanged several phone calls relating to the purchase of a kilogram of cocaine. Winters testified that he was returning a call to Montes when someone he believed to be John Ales answered the phone. Winters had never spoken with Ales before, the person who answered the telephone did not identify himself, and there was no discussion between them about the drug transactions before the phone was handed over to Montes. Winters assumed that he had spoken with John Ales because when Montes called, the Caller ID function on his telephone indicated that the calls were coming from the Aleses' residence. Moreover, Montes told Winters that Ales was the person who had driven him to the meeting the Express Stop on November 29. Because Winters could not arrange to arrive in time to conduct the transaction the night of December 5, the sale was put off until the following day. Montes indicated that he would be arriving at the Express Stop in the Aleses' vehicle, although he did not say who would be driving.

On December 6, 2001, Montes and Alfredo Vasquez came to the Express Stop to deliver the kilogram of cocaine to Winters. At the same time, another officer, Kevin Conklin, was assigned the task of contacting the state prosecuting attorney for the purpose of attempting to obtain a search warrant for the Aleses' residence. Most of the information that Conklin included in his affidavit came from Winters, but Conklin had not read Winters's reports. However, Conklin had conducted surveillance during parts of the investigation and had been present when Winters gave Montes the $4000. Conklin had also checked the tax records for the French Road residence, which indicated that the taxes were billed to John and Judy Ales, From this, Conklin drew the conclusion that they were the owners of the property. At the time the warrant was obtained, both Conklin and Winters believed that John Ales was a member of the conspiracy to distribute cocaine.

Defendant Juan Vasquez was present at the French Road residence when the officers executed the warrant on December 6. He was detained during the search and, during that detention, made certain incriminating statements, at first denying any involvement but ultimately admitting that he had transported cocaine from Texas to Saginaw. Following his indictment, he moved to suppress these statements, alleging that statements in the affidavit on which the warrant was based were false or had been made in reckless disregard of the truth. Specifically, the defendant challenged the following paragraphs in the affidavit:

[Paragraph 3(d)]: Affiant has knowledge from Lt. Michael Winters, of BAY-ANET, that BAYANET made a wire transfer to Texas in the amount of two thousand dollars ($2,000.00) in advance of a purchase of two kilograms of cocaine from Hosea L[ast] N[ame]

U[nknown], Louie LNU, and John Ales listed above on October 18, 2001.

[Paragraph 3(f)]: Aff[ia]nt has knowledge from other members of BAYANET that four thousand dollars ($4,000.00) was given to Hosea LNU and John Ales on November 29, 2001 as another deposit towards the two kilograms of cocaine.

[Paragraph 3(*l*)]: Affiant has knowledge from other members of BAYANET that Hosea LNU and John Ales called last night to try to deliver only one kilogram of cocaine.

The district court held a hearing on the suppression motion and, based on testimony from Officers Conklin and Winters, ruled that the only portion of the affidavit that could arguably be found objectionable under *Franks* was the implication in Paragraph 3(*l*) that John Ales had actually conversed with Winters about the details of a drug transaction, when the facts indicated that he had merely answered the phone on the evening in question. Excising that portion of the affidavit, the district court then held that there remained sufficient information to constitute probable cause to support the search warrant.

Reserving the right to appeal the district court's ruling on the *Franks* question, the defendant pleaded guilty to distribution of 500 grams or more of cocaine. He was found guilty and was sentenced to 70 months of imprisonment, from which order he now appeals.

## DISCUSSION

We review the district court's factual findings in conjunction with suppression rulings for clear error and the court's legal conclusions de novo. *See United States v. Stewart,* 306 F.3d 295, 304 (6th Cir.2002).

In order to succeed on the basis of a challenge to the validity of a search warrant under *Franks,* a defendant must establish by a preponderance of the evidence that statements used to support issuance of the warrant were false or made with reckless disregard for the truth. In that event, the district court is required to review the warrant without the challenged statements to determine whether or not the remaining information is sufficient to establish probable cause. *See Franks,* 438 U.S. at 155–156; *see also United States v. Hill,* 142 F.3d 305, 310 (6th Cir.1998); *United States v. Campbell,* 878 F.2d 170, 171–72 (6th Cir.1989).

Here, the district court was troubled by the fact that some of the statements in the affidavit amounted to conclusions rather than supporting facts. But, the court also recognized that the urgent nature of the situation required that the warrant be secured in a hurried fashion and by an officer who was not the main undercover officer involved in the investigation. *See United States v. Elkins,* 300 F.3d 638, 649 (6th Cir.2002) (noting that affidavits are normally drafted in the midst of an investigation and should be interpreted in a "commonsense manner"). Our review of the record leads us to conclude that the following findings of the district court are fully supported by the evidence:

Looking at the paragraphs of the affidavit ..., paragraph 3(d) indicates that a wire transfer was made in Texas. The paragraph does not state that the wire transfer of $2,000 was made to John Ales, but it does state that the wire transfer was made for the purpose of arranging a two kilogram purchase from three individuals, including John Ales. And based upon the information that was disclosed upon the record at this hearing, the court concludes that it was reasonable for Lieutenant Winters to make that conclusion; that is, that John Ales was involved in the transaction in which kilogram quantities of cocaine

would be sold. Consequently, the court does not believe that the statements made in paragraph 3(d) of the search warrant affidavit was false, or were false, or were made in reckless disregard for the truth.

I believe the conclusions were reasonable. Once again, it would have been better had the affiant stated the primary facts so that no conclusions would have to be stated in the affidavit, [which] was not done here[. T]he court does not believe that [the] practice rendered that paragraph of the affidavit fatally false however.

The second statement is in paragraph 3(f). It says: The affiant [h]as knowledge from other members of Bayanet that $4,000 was given to Hosea LNU, last name unknown, and John Ales on November 29. And another as another deposit toward the two kilogram purchase.

The information, based upon what the court heard, was that Lieutenant Winters learned that the subjects, the primary subjects, were in this area, they were staying at the French Road address, the transportation was being provided in a vehicle registered to Judy Ales, and that the individual with whom the Texas based people were staying was being compensated by money and drugs for the use of his house.

Further, Trooper Conklin testified that he learned the identity of the owner of the house was John and Judy Ales. In making that connection, he concluded that the individual who was at the site where the $4,000 was given over by Detective Winters was one and the same John Ales.

Trooper Conklin said he made the observation of an individual whom he later learned was John Ales, although he didn't learn to put the face and the name together until after he signed the search warrant affidavit. Detective Winters, however, knew prior to the search warrant affidavit being signed that the individual's last name was Ales. At least that's what the testimony indicated.

Ales was at the site, he was not in the car, he provided the transportation. There was apparently a statement made by the individual who actually received the money, Hosea, whom I believe the government has referred to as Montez, that Montez was given money and Ales was present and Ales had furnished the transportation to the site.

Once again, it would have been better had the primary facts been conveyed to the magistrate, but they weren't. This conclusion was made instead. I don't believe the conclusion was unreasonable under the circumstances, therefore, the court finds that the defendant has not sustained his burden that the statement contained in paragraph 3(f) of the search warrant affidavit was either false, knowingly false, or made with reckless disregard for the truth.

With respect to paragraph 3(i), the statement, or inference from the statement, that John Ales participated in a call to try to deliver one kilogram of cocaine, I find, is not supported by the record. John Ales answered the phone but he never initiated a call, he did not participate in any call or talk about any delivery of cocaine.

Separating that portion from the search warrant affidavit, we are left with the statement in paragraph 3(i) that the affiant has knowledge from other members of Bayanet that Hosea LNU called last night to try to deliver only one kilogram of cocaine.

Taking a look at ... paragraph 3(g), the affiant indicates that he learned from other members of Bayanet that cocaine

was loaded on a van in Texas and was on its way to the above listed address but it was delayed due to mechanical problems.

Paragraph 3(h) states that while the house on French Road—it doesn't state French Road, but the above listed house refer[s] to the French Road house—was under surveillance, that a van arrived last night. It says 12/6/01.... There's no indication that the same van that was loaded with cocaine was the one that arrived at the house. However, paragraph 3(j) states that the same van that was observed at the French Road house referenced in paragraph 3(h) was involved in the delivery of one kilogram of cocaine at 4:15 that day at the Sunoco gas station at M–81 and I–75.

When this statement is coupled with the non-excised portion of paragraph 3(i) that Hosea called to try to deliver one kilogram of cocaine, that the van was observed at the French Road house the night before and that the same van was involved in the delivery the following day, I believe that there is a sufficient basis for a magistrate to conclude that there was probable cause to believe that narcotics and narcotic paraphernalia as indicated in the prior search warrant affidavit would be located at the address listed in the search warrant affidavit. For that reason, I believe the search warrant is valid as was the search of the premises based upon the search warrant itself. Consequently, the court will deny the motion to suppress the evidence that was obtained pursuant to the search warrant for these purposes.

On appeal, the defendant simply has not been able to establish that the findings and conclusions of the district court are, in any significant respect, incorrect—either factually or legally. We conclude that there was probable cause to support issuance of the search warrant and that the ensuing execution of the warrant was therefore constitutionally valid.

### CONCLUSION

For the reasons set out above, we AFFIRM the judgment of the district court, specifically the order denying the defendant's motion to suppress.